Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 24, 2018

**2018 CO 79**

**No. 16SC849, <u>Bewley v. Semler</u>—Strict Privity—Standing—Pleading.**

In this case, the supreme court considers whether the strict privity rule bars claims against attorneys by non-clients absent a showing of fraud, malicious conduct, or negligent misrepresentation. We hold that, absent any wrongdoing, the strict privity rule does bar claims against attorneys by non-clients because holding otherwise may force attorneys to place non-clients' interests ahead of clients' interests. Because Semler did not allege any fraud, malicious conduct, or negligent misrepresentation, he lacks standing to assert a breach-of-contract claim.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

___

### 2018 CO 79

___

### Supreme Court Case No. 16SC849
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA206

___

### Petitioners:

Charles Bewley and Berenbaum Weinshienk P.C.,

v.

### Respondent:

R. Parker Semler.

___

### Judgment Reversed
*en banc*
September 24, 2018

___

**Attorneys for Petitioners:**
Wheeler Trigg O'Donnell LLP
Carolyn J. Fairless
Rebecca Graves Payne
  *Denver, Colorado*

**Attorneys for Respondent:**
Semler & Associates P.C.
R. Parker Semler
Andrew Oh-Willeke
Jeremy Goldblatt
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Bar Association:**
Montgomery Little & Soran, P.C.
Christopher B. Little
Erin C. Nave
Christopher T. Carry
     *Greenwood Village, Colorado*

**Attorneys for Amicus Curiae Colorado Civil Justice League:**
Taylor Anderson LLP
Lee Mickus
     *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1 R. Parker Semler, a member of a condominium association, filed a breach-of-contract claim against the law firm that employed the association's attorney. In support of that claim, he alleged that the attorney had a contract with the association's president not to represent one association member against another. He also alleged that the attorney had, on behalf of other association members he was representing, acquired a deed conveying ownership of parking spaces over which Semler also claimed ownership, thereby breaching the contract and damaging Semler.

¶2 The trial court dismissed the claim for lack of standing. A division of the court of appeals reversed, concluding that Semler had sufficiently alleged a breach-of-contract claim as a third-party beneficiary. In doing so, the division concluded that the strict privity rule, which "precludes attorney liability to non-clients absent fraud, malicious conduct, or negligent misrepresentation," Baker v. Wood, Ris & Hames, P.C., 2016 CO 5, ¶ 1, 364 P.3d 872, 874, did not bar Semler's claim.

¶3 We granted certiorari and now reverse. We conclude that the strict privity rule bars Semler's breach-of-contract claim, meaning he lacks standing to assert it.

## I. Facts and Procedural History[1]

¶4 This litigation began as a dispute over the ownership of three parking spaces at a condominium in downtown Denver. Semler, a member of the 1940 Blake Street

---

[1] We take the factual allegations underlying this litigation from Semler's complaint, amended complaint, and proposed second amended complaint.

Condominium Association ("the Association"), acquired an ownership interest in two of those parking spaces years ago. More recently, Perfect Place LLC, also an Association member, claimed that it had acquired a quitclaim deed that conveyed an ownership interest in those same two parking spaces, as well as a third.

¶5 To settle the competing claims to ownership, Perfect Place filed a quiet-title action, asking the trial court to declare it the rightful owner of the parking spaces.[2] Semler countered that he is the rightful owner of the parking spaces and that Perfect Place had wrongfully acquired the quitclaim deed.

¶6 While that litigation was ongoing, Semler initiated a second action asserting various claims against (as relevant here) the following four defendants: (1) Perfect Place; (2) Bruce S. Hellerstein, Perfect Place's principal and the Association's treasurer; (3) Bruce S. Hellerstein CPA, P.C., Hellerstein's accounting firm; and (4) Charles Bewley, an attorney who served as counsel to the Association and helped Perfect Place acquire the quitclaim deed at Hellerstein's direction (but did not represent Perfect Place in the quiet-title action). Semler alleged that those defendants had conspired to "seize" all rights in the parking spaces, that in doing so Hellerstein had breached his fiduciary duty to the Association's members, and that the other three defendants had aided and abetted

---

[2] This case is more fully described in <u>Perfect Place v. Semler</u>, 2018 CO 74, __ P.3d __, announced on September 17, 2018.

4

Hellerstein's breach. Semler later amended his complaint to add as a defendant the law firm Berenbaum Weinshienk P.C., which was Bewley's employer at all relevant times.

¶7    Facing motions to dismiss for failure to state a claim under C.R.C.P. 12(b)(5), Semler moved for leave to file a second amended complaint. His proposed second amended complaint alleged that Bewley had fraudulently acquired the quitclaim deed on Hellerstein and Perfect Place's behalf, and it added fraud-based claims against Bewley and Hellerstein. It also asserted a number of claims against Berenbaum Weinshienk, including one for breach of contract, the claim at issue here. In support of that claim, the proposed second amended complaint alleged that the Association's president had "instructed" Bewley that neither he nor Berenbaum Weinshienk was to represent the Association against any of its members or to represent one member against another. Moreover, it alleged that (1) Bewley agreed to those terms on behalf of himself and Berenbaum Weinshienk; (2) Semler, as a member of the Association, was an intended third-party beneficiary of that agreement; and (3) Berenbaum Weinshienk breached the agreement by representing Perfect Place in its acquisition of the quitclaim deed, thereby "forc[ing Semler] to litigate his rightful claim to ownership of [the parking spaces]" and causing him to "suffer[] a tangible economic loss to his legally protected interests, including lost opportunity damages."

¶8    The trial court issued an order addressing both the defendants' motions to dismiss and Semler's motion to file a second amended complaint. The court reasoned that the person whom Perfect Place acquired the quitclaim deed from—not Semler—was "the

5

victim of [any] fraud" that occurred, and Semler therefore lacked standing to sue. The court thus denied Semler's motion for leave to file a second amended complaint and granted the motions to dismiss. The court also ordered that Semler pay the defendants' attorney's fees and costs.

¶9 Semler appealed. Before the court of appeals division heard oral arguments, however, this court issued two opinions that bear on the case. In Baker, we reaffirmed the "strict privity rule," i.e., that an attorney's liability to a non-client "is generally limited to the narrow set of circumstances in which the attorney has committed fraud or a malicious or tortious act, including negligent misrepresentation." ¶ 2, 364 P.3d at 874. And in Warne v. Hall, 2016 CO 50, ¶ 24, 373 P.3d 588, 595, we adopted the "plausible on its face" pleading standard, as articulated by the U.S. Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The division directed the parties to address at oral arguments whether the holding in Warne applies retroactively.

¶10 The division ultimately did not decide that question. Instead, it affirmed the dismissal of all but one of Semler's claims. Semler's fraud-based claims, the division concluded, were properly dismissed for failure to state a claim under C.R.C.P. 12(b)(5) because Semler's connection to any fraudulent conduct was too attenuated. Semler v. Hellerstein, 2016 COA 143, ¶¶ 18–22, __ P.3d __. But the division reasoned that because "Semler's remaining claims assert conduct against him directly, the trial court's reasoning for dismissal based on lack of standing does not apply." Id. at ¶ 23. So the division

6

reviewed those claims under C.R.C.P. 12(b)(5). Id. It concluded that, under either Warne's "plausible on its face" pleading standard or the more lenient, pre-Warne "no set of facts" pleading standard, all but one of those claims failed to state a claim. Id. at ¶ 26. When the division analyzed Semler's sole surviving claim—his claim for breach of contract against Berenbaum Weinshienk—it did not specify which standard of review it was applying.[3] Rather, it recounted the allegations from Semler's second amended complaint and then declared that the Association president's "instruction" to Berenbaum Weinshienk created "a contract of which Semler was an intended beneficiary." Id. at ¶ 51.

¶11 The division then concluded that Baker does not bar Semler's contract claim against Berenbaum Weinshienk. Id. at ¶ 54–55. In Baker, we rejected as inconsistent with the strict privity rule the argument that beneficiaries of a testator's estate had standing to assert legal-malpractice or breach-of-contract claims against the attorneys who drafted the testator's estate-planning documents. ¶¶ 1–2, 364 P.3d at 874. The division here reasoned that Semler had not alleged that the breach of contract resulted from the quality of Bewley's legal representation; he had instead alleged that Bewley's representation of Perfect Place in its acquisition of title to the parking spaces breached Bewley's contract

---

[3] Before the division addressed the claims that it concluded had been properly dismissed, it stated that it "do[es] not apply the Warne standard." Semler, ¶ 26 n.3. But it never clarified which standard of review it was applying when it later analyzed Semler's breach-of-contract claim.

with the Association not to represent one member against another.  Semler, ¶ 55.  The

division found that difference to "undercut[] the policy considerations identified in Baker

as supporting the strict privity rule."  Id.  Thus, the division concluded that Semler had

sufficiently pleaded a breach-of-contract claim under a third-party beneficiary theory of

liability.  Id. at ¶ 56.

¶12    The division therefore reversed the trial court's order awarding attorney's fees to

Berenbaum Weinshienk and Bewley,[4] id. at ¶ 59, and remanded the case to the trial court

for further proceedings on the sole surviving claim for breach of contract against

Berenbaum Weinshienk, id. at ¶ 63.

¶13    We granted certiorari to determine whether the division (1) erred in concluding

that Baker did not deprive Semler of standing to assert his breach-of-contract claim, and

(2) failed to properly apply Warne.[5]

---

[4] Semler had alleged his breach-of-contract claim only against Berenbaum Weinshienk; the division did not explain why it reversed the trial court's award of attorney's fees to Bewley as well.

[5] Specifically, we granted certiorari to review the following issues:

1. [REFRAMED] Whether the court of appeals' ruling, that a non-client condominium association member has standing to sue the association's former attorneys under a third-party beneficiary theory of liability, misconstrued this court's holding in Baker v. Wood, Ris & Hames, P.C., 2016 CO 5, 364 P.3d 872.

2. Whether the court of appeals' application of "the prior and more lenient 'no set of facts' standard," to conclude that Plaintiff-Respondent's breach of contract claim survived a C.R.C.P. 12(b)(5) motion to dismiss,

8

## II. Standard of Review

¶14 We review a trial court's ruling on a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) de novo. Norton v. Rocky Mountain Planned Parenthood, Inc., 2018 CO 3, ¶ 7, 409 P.3d 331, 334. In doing so, we accept all factual allegations in the complaint as true, viewing them in a light most favorable to the plaintiff. Id. Dismissal under C.R.C.P. 12(b)(5) is proper only "where the factual allegations in the complaint cannot, as a matter of law, support the claim for relief." Colo. Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶ 16, 269 P.3d 1248, 1253.

## III. Analysis

¶15 We begin by explaining the third-party beneficiary exception to privity of contract and the strict privity rule for malpractice claims brought against an attorney by a non-client. Next, we apply that law to Semler's breach-of-contract claim. We conclude that the strict privity rule bars Semler's breach-of-contract claim, meaning he lacks standing to assert it. Because Semler cannot bring his claim under any pleading standard, we need not resolve whether the division below failed to properly apply Warne.

## A. Law

¶16 Generally, only parties to a contract may seek to enforce its terms. See Forest City Stapleton Inc. v. Rogers, 2017 CO 23, ¶ 11, 393 P.3d 487, 490. In other words, a party must

---

contravenes this court's ruling in Warne v. Hall, 2016 CO 50, 373 P.3d 588, which adopted the "plausible on its face" standard.

have privity of contract to sue for breach of that contract. See Privity, Black's Law Dictionary (10th ed. 2014).

¶17    One exception to this requirement involves third-party beneficiaries to a contract. In Colorado, a "person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." E.B. Roberts Constr. Co. v. Concrete Contractors, Inc., 704 P.2d 859, 865 (Colo. 1985). That is, a third-party beneficiary to a contract may generally sue to enforce its terms.

¶18    But third-party beneficiary claims against attorneys are treated differently. "The common-law rule is that an attorney is not responsible for an injury to a third person arising out of the representation." 1 Ronald E. Mallen, Legal Malpractice § 6:1 (2018 ed.). Indeed, we have recognized that the attorney-client relationship is a fiduciary relationship in which "an attorney's obligation is generally to his or her client and not to a third party." Baker, ¶ 20, 364 P.3d at 876–77. For that reason, we adhere to "the 'strict privity rule,' which precludes attorney liability to non-clients absent fraud, malicious conduct, or negligent misrepresentation." Id. at ¶ 1, 364 P.3d at 874. This rule "protects the sanctity of and duties and protections inherent in the attorney-client relationship." Id. at ¶ 35, 364 P.3d at 879. It also "strikes the appropriate balance between [clients' interests], on the one hand, and non-clients claiming to be injured by an attorney's conduct, on the other." Id.

¶19 We most recently examined the strict privity rule in <u>Baker</u>. There, the beneficiaries of a testator's estate alleged that the attorneys who represented the testator had failed to properly advise him, thereby frustrating his intent to treat the intended beneficiaries equally. <u>Id.</u> at ¶ 11, 364 P.3d at 875. The beneficiaries sued the attorneys, asserting claims for breach of contract (as third-party beneficiaries) and professional negligence. <u>Id.</u> The district court dismissed these claims, and the court of appeals affirmed. <u>Id.</u> at ¶¶ 13, 15, 364 P.3d at 875, 876.

¶20 In affirming the court of appeals, we concluded that the beneficiaries lacked standing to pursue a claim for professional malpractice against the attorneys based on either a breach-of-contract or a professional-negligence theory. <u>Id.</u> at ¶¶ 1–2, 364 P.3d at 874. In doing so, we reaffirmed our adherence to the strict privity rule, explaining that "an attorney's liability [to non-clients] is generally limited to the narrow set of circumstances in which the attorney has committed fraud or a malicious or tortious act, including negligent misrepresentation." <u>Id.</u> at ¶ 2, 364 P.3d at 874. And we expressly declined the beneficiaries' invitation to abandon the strict privity rule in favor of a rule that would allow them to assert legal-malpractice and contract claims against the attorneys despite the absence of privity. <u>Id.</u> at ¶ 18, 364 P.3d at 876. We recognized that, in Colorado, "a person not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely incidental benefit of the contract." <u>Id.</u> at ¶ 45, 364 P.3d at 881. But we concluded that the beneficiaries' proposed application of that

11

rule in the context of an attorney-client relationship would be "contrary to each of the settled policies underlying the strict privity rule to which Colorado courts have long adhered." Id. at ¶ 48, 364 P.3d at 882.

¶21    Our examination of caselaw revealed four such policies, three of which are relevant here. "First, limiting an attorney's liability to his or her clients protects the attorney's duty of loyalty to and effective advocacy for the client." Id. at ¶ 23, 364 P.3d at 877. The specter of negligence claims brought by non-clients, we reasoned, would diminish an attorney's ability to "act in his or her client's best interest." Id. "Second, expanding attorney liability to non-clients could result in adversarial relationships between an attorney and third parties and thus give rise to conflicting duties on the part of the attorney." Id. at ¶ 24, 364 P.3d at 877. And third, were liability to extend to third parties, the attorney could "be liable to an unforeseeable and unlimited number of people." Id. at ¶ 26, 364 P.3d at 878. Expanded liability would deter representation in certain matters, "compromising the interests of potential clients by making it more difficult for them to obtain legal services" and risking the client's loss of "control over his or her contract for legal services." Id. at ¶ 27, 364 P.3d at 878.[6] At bottom, these policies

---

[6] The fourth policy, which relates more directly to Baker's facts, is that extending liability to non-clients would invite "suits by disappointed beneficiaries that would cast doubt on the testator's intentions long after the testator is deceased and unavailable to speak for himself or herself." Baker, ¶ 28, 364 P.3d at 878.

reveal that the strict privity rule limits attorneys' liability to non-clients in order to protect the attorney-client relationship.

¶22    We therefore reached two important conclusions in <u>Baker</u>: (1) the beneficiaries lacked standing to pursue a claim for professional malpractice against the attorneys under breach-of-contract or professional-negligence theories, <u>id.</u> at ¶¶ 1–2, 364 P.3d at 874; and (2) the policies underlying the strict privity rule invalidated the beneficiaries' proposal to allow legal-malpractice and contract claims against the attorneys, <u>id.</u> at ¶ 48, 364 P.3d at 882.

¶23    With these principles in mind, we now turn to the facts of this case.

## B. Application

¶24    Semler's proposed second amended complaint asserted a breach-of-contract claim against Berenbaum Weinshienk. In support of that claim, the complaint alleged that the Association's president "instructed Bewley that neither he nor Berenbaum Weinshienk was to represent" the Association against any member or to represent one member against another. Bewley agreed to that instruction on behalf of himself and Berenbaum Weinshienk. The complaint then asserted the legal conclusion that, because Bewley provided legal services to Perfect Place at Hellerstein's direction and with knowledge that Semler was a member of the Association, Berenbaum Weinshienk "breached the agreement." Finally, the complaint asserted that the breach damaged Semler, who was an intended third-party beneficiary of the agreement as an Association member. The nature of those alleged damages was that Semler was "forced" to defend against the

13

quiet-title action and "suffered a tangible economic loss to his legally protected interests, including lost opportunity damages."

¶25 The strict privity rule bars this claim. As we made clear in <u>Baker</u>, "an attorney's liability [to non-clients] is generally limited to the narrow set of circumstances in which the attorney has committed fraud or a malicious or tortious act, including negligent misrepresentation." ¶ 2, 364 P.3d at 874. The allegations in Semler's proposed second amended complaint do not place this breach-of-contract claim within any of these exceptions. Rather, taking those allegations as true, they establish only that (1) Bewley and Berenbaum Weinshienk (collectively, "the Attorneys") agreed not to represent one member of the Association against another member, (2) the Attorneys "breached" that agreement by representing Perfect Place in its acquisition of the quitclaim deed, and (3) Semler—a third-party beneficiary to the agreement—suffered damages as a result. Put differently, Semler alleges that, by performing work on behalf of their client, the Attorneys breached a contract and damaged him. In <u>Baker</u>, however, we concluded that non-clients lack standing to assert breach-of-contract claims against attorneys. ¶¶ 1–2, 364 P.3d at 874. And we expressly declined to extend the third-party beneficiary theory of contract liability to allow claims brought by non-clients against attorneys, as doing so would be contrary to the policies underlying the strict privity rule. <u>Id.</u> at ¶¶ 44, 48, 364 P.3d at 881, 882.

¶26 So too here. Limiting the Attorneys' liability to their clients protects their "duty of loyalty to and effective advocacy for the client[s]" with whom they have an attorney-

14

client relationship. Id. at ¶ 23, 364 P.3d at 877. To extend their liability to the Association's members, by contrast, could force the Attorneys to weigh their clients' interests against non-clients' interests, see Noble v. Bruce, 709 A.2d 1264, 1270 (Md. 1998), which might prevent them from acting in their clients' best interest, see Baker, ¶ 23, 364 P.3d at 877. Doing so could likewise result in adversarial relationships between the Attorneys and the Association's members, creating conflicting duties that could constrain the Attorneys' ability to represent their clients. See id. at ¶ 24, 364 P.3d at 877. And extended liability might deter the Attorneys from accepting certain legal matters, making it more difficult for their clients to obtain the Attorneys' services. See id. at ¶ 27, 364 P.3d at 878. The policies underlying the strict privity rule therefore counsel against permitting Semler's breach-of-contract claim.

¶27    Semler nevertheless advances a number of arguments that the strict privity rule and its underlying policy justifications do not compel this result. He first asserts that Baker disapproved only breach-of-contract claims that allege professional malpractice or depend on conflicts of interest, whereas his claim is merely a run-of-the-mill contract claim in which the defendants happen to be attorneys. Not so. The strict privity rule, as we defined it in Baker, is not as restricted as Semler contends; it "precludes attorney liability to non-clients absent fraud, malicious conduct, or negligent misrepresentation." ¶ 1, 364 P.3d at 874. Semler's claim does not fit within any of those exceptions.

¶28    He next contends that courts have, for over 100 years, permitted non-clients to assert non-tort claims against attorneys, and that Baker left that caselaw undisturbed.

15

The cases he cites, however, are distinguishable. In some, the attorney had a direct business or contractual relationship with the non-client party, meaning they were in privity. E.g., Accident & Injury Med. Specialists, P.C. v. Mintz, 2012 CO 50, ¶ 2, 279 P.3d 658, 659; Conyers v. Lee, 511 P.2d 506, 509 (Colo. App. 1973). In others, the non-client sought an attorney's money under a theory of restitution or conversion, unlike the breach-of-contract claim that Semler asserts here. See, e.g., Coppock v. Helfer, 515 P.2d 488, 489–90 (Colo. App. 1973); Benson v. Eli, 66 P. 450, 451 (Colo. App. 1901). Notably, none of the cases involved claims relating to the attorney-client relationship; that is, the claims did "not interfere with any professional duties owed to a client" and were "not premised on an assertion of a duty owed" to the non-client. Berger v. Dixon & Snow, P.C., 868 P.2d 1149, 1153 (Colo. App. 1993).

¶29 Finally, Semler argues that the potential third-party beneficiaries of the Association's contract with the Attorneys were limited in number, and that the Attorneys' duty of loyalty to their clients could not be impaired by the "valid and binding restriction of practice agreement." Answer Br. 22. We disagree. Although the Association here has only a handful of members, to create a vague exception where potential third-party beneficiaries are few in number would swallow the strict privity rule. And if the Attorneys owed duties to any number of those potential third-party beneficiaries, those duties could impair the Attorneys' duty to their clients. Baker, ¶ 24, 364 P.3d at 877. In

16

short, to permit liability to non-clients here could impair the Attorneys' ability to represent their clients.[7]

¶30    Because we conclude that the strict privity rule bars Semler's breach-of-contract claim, he lacks standing to assert that claim under either Warne's "plausible on its face" pleading standard or the "no set of facts" pleading standard.  So we need not decide whether the division below failed to properly apply Warne.

## IV. Conclusion

¶31    For the reasons stated, we conclude that the strict privity rule bars Semler's breach-of-contract claim, meaning he lacks standing to assert it.  We therefore reverse the judgment of the court of appeals and remand the case to that court for further proceedings.

---

[7] As an alternative argument, Semler contends that he should be granted leave to amend his pleadings to reassert his tort claims against the Attorneys.  We decline to address this assertion.  We denied Semler's cross-petition to consider those claims, and we do not address issues not included in the order granting certiorari.  State v. Nieto, 993 P.2d 493, 505 (Colo. 2000).