Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2019 CO 46**

**No. 18SA266, *Klun v. Klun*—Contracts—Settlement Agreement—Fee-Shifting.**

In this case, the Supreme Court is asked to decide whether the defendant is entitled to recover his attorney fees pursuant to a fee-shifting provision of a prior settlement agreement between him and the plaintiffs.

The fee-shifting clause at issue provided that the prevailing party in an action to enforce, by any means, any of the terms of the settlement agreement shall be awarded all costs of the action, including reasonable attorney fees.  Here, the plaintiffs' claims, in substance, sought relief based on allegations that the defendant had breached the terms of the settlement agreement, and the defendant responded by arguing that it was the plaintiffs' claims that were inconsistent with that agreement.  In these circumstances, the court concludes that the plaintiffs' claims constituted an effort to enforce the terms of the settlement agreement.  Indeed, consistent with this conclusion, the plaintiffs themselves had asserted a claim for fees pursuant to the fee-shifting clause at issue.

Accordingly, the court holds that the defendant, as the prevailing party on all claims below, is entitled to recover his attorney fees pursuant to the settlement agreement's fee-shifting clause.  The court therefore reverses the water court's order

denying an award of such fees and remands this case for a determination of the trial and

appellate fees to be awarded to the defendant.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

---

**2019 CO 46**

---

**Supreme Court Case No. 18SA266**
*Appeal from the District Court*
Pueblo County District Court, Water Division 2, Case No. 17CW3033
Honorable Larry C. Schwartz, Water Judge

---

**Plaintiffs-Appellees:**

Thomas Klun and Joseph Klun, Jr.

v.

**Defendant-Appellant:**

Michael Klun,

and Concerning,

**Appellee Pursuant to C.A.R. 1(e):**

Bill Tyner, Division Engineer, Water Division 2.

---

**Order Reversed**
*en banc*
June 3, 2019

---

**Attorneys for Defendant-Appellant:**
Carlson, Hammond & Paddock, LLC
Karl D. Ohlsen
Katrina B. Fiscella
        *Denver, Colorado*

**Attorneys for Plaintiffs-Appellees:**
Stinnett Masters & Massey LLP
Jeff A. Massey
*Colorado Springs, Colorado*

No appearance on behalf of Division Engineer.

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     Defendant Michael Klun appeals the water court's order denying his motion for attorney fees after he prevailed on all claims brought against him in the underlying action by plaintiffs Thomas Klun and Joseph Klun, Jr. (because the parties are brothers and share the same last name, we will consistently refer to Michael Klun as "defendant" and Thomas Klun and Joseph Klun, Jr., as "plaintiffs," even though in the initial litigation between them, which we discuss below, their roles were reversed).  Defendant here asserts that he is entitled to recover his attorney fees pursuant to a fee-shifting provision of a prior settlement agreement (the "Settlement Agreement") between him and plaintiffs.

¶2     The fee-shifting clause at issue provided that the prevailing party in an action to enforce, by any means, any of the terms of the Settlement Agreement shall be awarded all costs of the action, including reasonable attorney fees.  Here, plaintiffs' claims, in substance, sought relief based on allegations that defendant had breached the terms of the Settlement Agreement, and defendant responded by arguing that it was *plaintiffs'* claims that were inconsistent with that Agreement.  In these circumstances, we conclude that plaintiffs' claims constituted an effort to enforce the terms of the Settlement Agreement.  Indeed, consistent with this conclusion, plaintiffs themselves had asserted a claim for fees pursuant to the fee-shifting clause at issue.

¶3     Accordingly, we hold that defendant, as the prevailing party on all claims below, is entitled to recover his attorney fees pursuant to the Settlement Agreement's fee-shifting clause, and we therefore reverse the water court's order denying an award of such fees

3

and remand this case for a determination of the trial and appellate fees to be awarded to defendant.

## I. Facts and Procedural History

¶4    In 2011, defendant sued plaintiffs for dissolution and winding up of their family-held partnership, Klun Farm & Cattle, which owned certain farm property and associated shares of water stock.

¶5    Several months later, the parties reached a mediated settlement in which plaintiffs agreed to buy out defendant's interest in the partnership, including defendant's interest in the farm property and associated shares of water stock. Plaintiffs ultimately did not fulfill their obligations under this settlement, however, and over the next two years, defendant filed four motions in the Pueblo district court to enforce the settlement. These proceedings culminated in 2014, when the court entered a money judgment against plaintiffs in excess of $1.6 million and ordered defendant to convey the farm property and water shares to plaintiffs upon payment in full by plaintiffs. The court also awarded attorney fees to defendant based on plaintiffs' "groundless and frivolous defense and obdurate litigation behavior."

¶6    Several weeks later, plaintiffs filed petitions in bankruptcy seeking reorganization under Chapter 11. Defendant participated in the bankruptcy proceedings as plaintiffs' largest unsecured creditor.

¶7    The parties subsequently resolved the bankruptcy proceedings by entering into a memorandum of understanding that was subsequently finalized into the Settlement Agreement at issue. As pertinent here, section 2 of the Settlement Agreement required

4

plaintiffs to convey their entire interest in three parcels of land (parcels A, B, and C), as well as the shares of water stock associated with those parcels, to defendant. Section 7 provided, in pertinent part, "The Parties acknowledge that all existing right away [sic] accesses remain unaffected." In section 10, the parties represented and warranted that they had neither made nor caused to be made "any encumbrances, liens or other interests on the Property to be transferred." And section 13(a) included, as pertinent here, a fee-shifting clause that entitled the prevailing party in any action to enforce the Settlement Agreement, regardless of the means of enforcement, to an award of costs, including reasonable attorney fees. In consideration of plaintiffs' representations and contractual promises, defendant agreed to provide plaintiffs with a full release and to file an appropriate satisfaction of judgment and dismissal of all remaining claims against plaintiffs. Pursuant to the Settlement Agreement, plaintiffs conveyed parcels A, B, and C to defendant by general warranty deed.

¶8    Prior to the Settlement Agreement, the parties' family farm had been operated as a single unit. The fragmentation effectuated by the Settlement Agreement almost immediately led to conflicts and confrontations among the parties. According to plaintiffs, shortly after signing the Settlement Agreement, defendant, contrary to property lines that were acknowledged and acquiesced to for over fifty years, began preventing plaintiffs from accessing head gates, valves, and ditch roads that they needed to access to irrigate their property, and defendant allegedly damaged a divider box weir to divert extra water into his lateral. In addition, plaintiffs alleged that defendant had dug up plaintiffs' pipeline at a head gate and permanently removed an air vent, shut-off

5

valve, and Alfalfa Valve. Plaintiffs further claimed that defendant moved the shut-off valve onto his property, constructed a new road and large berm on the southern property line of his parcel, and excluded plaintiffs from all ingress and egress on the parcels that were transferred to defendant under the Settlement Agreement.

¶9 In light of the foregoing, and based on their view that under the express terms of the Settlement Agreement, they had retained all historical rights of ingress and egress, including access to all valves, head gates, and ditch roads on all parcels whether they were exchanged or not, plaintiffs filed the present action in the water court. In this action, plaintiffs asserted claims for (1) a temporary restraining order and preliminary injunction precluding defendant from denying plaintiffs reasonable historical access to the head gate that was the sole access point to the only lateral that provided irrigation water to plaintiffs' farm land; (2) a declaration that defendant shall not limit reasonable access to head gates and valves historically used to irrigate plaintiffs' farm operation, shall not exclude plaintiffs from historical easements affecting plaintiffs' farm operation, and shall remove the above-referenced berm, which plaintiffs alleged restricted the natural flow of irrigation water on which plaintiffs relied; (3) conversion of plaintiffs' personal property by taking possession of plaintiffs' air vent, valves, and pipeline, among other property, as well as by diverting plaintiffs' water from the newly constructed diverter box; and (4) trespass by destroying and restricting access to plaintiffs' property without legal right or plaintiffs' consent.

¶10 Plaintiffs subsequently filed a motion for partial summary judgment, alleging, among other things, that (1) pursuant to the Settlement Agreement, they had retained all

6

of their historical rights of ingress and egress, including access to all valves, head gates, and ditch roads on all parcels whether they were exchanged or not, and (2) "[t]he clear and unambiguous terms of the Settlement Agreement demonstrate that the Parties intended and did in fact contractually agree that all rights of ingress and egress would survive the exchange of the parcels." Based on these allegations, plaintiffs asserted, "The defendant has breached the Settlement Agreement by unilaterally restricting the Plaintiffs' access to all historical rights of way, while maintaining that he has unfettered access to the Plaintiffs' property."

¶11 Defendant also moved for partial summary judgment, specifically as to plaintiffs' declaratory judgment, conversion, and trespass claims. As pertinent here, he argued that plaintiffs were not entitled to relief on these claims because they had "voluntarily divested themselves of the property rights they now seek to recapture by executing the June 4, 2015, Warranty Deed and [the Settlement Agreement]." Thus, like plaintiffs' motion, defendant's motion focused on the Settlement Agreement.

¶12 The water court granted partial summary judgment in defendant's favor on the portions of plaintiffs' declaratory judgment claim requesting that the court order defendant to return the irrigation pipe to its prior condition (including returning plaintiffs' air vent, Alfalfa Valve, and shut-off valve to where they were previously), to move the road from on top of plaintiffs' pipeline, and to preclude defendant from padlocking any common valves. The court otherwise denied both parties' motions for partial summary judgment.

7

¶13    The case proceeded to trial, and during the trial, the water court dismissed certain of plaintiffs' claims pursuant to C.R.C.P. 41(b)(1). After the conclusion of the evidence and the submission of written closing arguments by the parties, the court then issued detailed and comprehensive findings of fact and conclusions of law, ruling against plaintiffs on all of their remaining claims and entering judgment for defendant. As pertinent here, the court rejected plaintiffs' claims for conversion and trespass because plaintiffs had "failed to present any credible evidence supporting their theoretical property line." The court also rejected plaintiffs' easement claims because, among other things, those claims were contrary to both the Settlement Agreement's plain language and plaintiffs' repeated agreements to convey their "entire interest" without any indication or statement of intent to reserve access rights to the transferred property.

¶14    Defendant then requested attorney fees pursuant to section 13(a) of the Settlement Agreement. Plaintiffs opposed this motion, contending that section 13(a) "clearly and unambiguously applies to claims of breach of the agreement and suits to obtain specific performance" and that defendant was not entitled to attorney fees because the provision was silent as to claims for declaratory relief.

¶15    The water court sided with plaintiffs and denied defendant's fee motion. In so ruling, the court stated, in pertinent part:

> The Court finds that Section 13(a) of the parties' Settlement Agreement does not provide a basis for an award of attorney fees to Defendant under the facts of this case. Plaintiffs did not contend that Defendant breached the settlement agreement, did not pursue a breach of contract or specific performance claim. Plaintiffs sought only a declaratory judgment and injunctive relief. Therefore, Plaintiffs' claims in this matter did not violate

8

the Settlement Agreement. The litigation in this case did not involve enforcement of the Settlement Agreement.

¶16 Defendant now appeals from this order.

## II. Analysis

¶17 After setting forth the applicable standard of review, we consider whether section 13(a) of the Settlement Agreement mandates an award of attorney fees on the facts of this case. We conclude that it does.

## A. Standard of Review

¶18 Contract interpretation presents a question of law that we review de novo. *Ad Two, Inc. v. City & Cty. of Denver ex rel. Mgr. of Aviation*, 9 P.3d 373, 376 (Colo. 2000). In construing a contract, our primary goal is to determine and give effect to the intent of the parties. *Id.* We determine the parties' intent primarily from the language of the instrument itself. *Id.* When a written contract is complete and free from ambiguity, we will deem it to express the intent of the parties, and we will enforce it according to its plain language. *Id.* In ascertaining whether provisions of an agreement are ambiguous, we review the instrument's language and construe it consistent with the plain and generally accepted meaning of the words employed. *Id.*

¶19 Terms used in a contract are ambiguous when they are susceptible of more than one reasonable interpretation. *Id.* The mere fact that the parties may interpret the agreement differently, however, does not alone establish an ambiguity in the agreement. *Id.* at 377. Absent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties. *Id.* at 376–77.

9

## B. Application

¶20    Section 13(a) of the Settlement Agreement provides:

> Nothing in this Agreement will be construed so as to impair any legal or equitable right of either Party hereto to enforce any of the terms of this Agreement *by any means*, including *without limitation*, an action for damages or a suit to obtain specific performance of any or all of the terms of this Agreement.  In the event of such action, the prevailing Party shall be awarded all costs of the action, including reasonable attorneys' fees, in addition to any other relief to which such Party may be entitled.

(Emphases added.)

¶21    On the facts before us, we conclude that this provision mandates an award of attorney fees to defendant in this case.

¶22    As an initial matter, we note that, contrary to plaintiffs' assertion and the water court's ruling, the language of this provision is not limited to claims for breach of contract or specific performance.  Rather, it unambiguously mandates an award of fees to the prevailing party in any action to enforce the agreement, *regardless of the means by which enforcement is sought* (i.e., enforcement "by any means"), including "without limitation" actions for damages or specific performance.  On its face, then, the provision contemplates claims to enforce the agreement *beyond* just damages actions for breach of contract and suits to obtain specific performance.  The contrary reading by plaintiffs and the water court gives no meaning to the phrase "by any means, including without limitation."  Accordingly, we cannot agree with the narrow interpretation advanced by plaintiffs and the water court.

¶23    The question thus becomes whether plaintiffs' claims amounted to an effort to enforce any of the Settlement Agreement's terms.  We conclude that they did.

10

Specifically, the general allegations of plaintiffs' complaint began by quoting the Settlement Agreement. The complaint then proceeded to describe defendant's actions that plaintiffs maintain were contrary to that Agreement. Although the complaint did not expressly allege breaches of the Agreement, that was the import of the allegations, and plaintiffs' motion for partial summary judgment made clear that that was precisely what plaintiffs were alleging. Thus, as noted above, in their motion, plaintiffs asserted that (1) pursuant to the Settlement Agreement, they had retained all of their historical rights of ingress and egress on all parcels whether they were exchanged or not; (2) "[t]he clear and unambiguous terms of the Settlement Agreement demonstrate that the Parties intended and did in fact contractually agree that all rights of ingress and egress would survive the exchange of the parcels"; and (3) "[t]he defendant has breached the Settlement Agreement by unilaterally restricting the Plaintiffs' access to all historical rights of way, while maintaining that he has unfettered access to the Plaintiffs' property."

¶24     Similarly, in their reply in further support of their motion, plaintiffs contended, "The clear and unambiguous terms of the Settlement Agreement demonstrate that the Parties intended and did in fact contractually agree that all rights of ingress and egress would survive the exchange of the parcels, whether on the Plaintiffs' property or the Defendant's property." And plaintiffs asserted that defendant was attempting to alter the terms of the Settlement Agreement to refuse access to plaintiffs but continue unfettered access to plaintiffs' property "in direct conflict with the express terms of the Settlement Agreement and established water law jurisprudence."

11

¶25 Accordingly, plaintiffs' own pleadings made clear that their claims turned on their interpretation of the Settlement Agreement, the alleged terms of which plaintiffs were seeking to enforce.

¶26 Notably, defendant and the water court likewise appear to have understood that plaintiffs' claims implicated the terms of the Settlement Agreement. Accordingly, in his motion for partial summary judgment, defendant contended that through their claims for relief in this case, plaintiffs were seeking to regain the rights that they had prior to the Settlement Agreement and that their effort to do so was "contrary to the express terms of the settlement, the conveyance, the circumstances surrounding dissolution, and the continued conflict between the parties." Defendant further asserted, "Plaintiffs voluntarily divested themselves of the property rights they now seek to recapture by executing the June 4, 2015, Warranty Deed and [the Settlement Agreement]."

¶27 Similarly, notwithstanding its later order denying defendant's motion for attorney fees, the water court found, among other things, that plaintiffs' requested easements were contrary to the plain terms of the Settlement Agreement.

¶28 In our view, the foregoing facts make clear that through their claims for relief, plaintiffs were, in fact, seeking to enforce the terms of the Settlement Agreement. Indeed, consistent with this conclusion, plaintiffs themselves repeatedly asserted a right to attorney fees under the fee-shifting provision of the Settlement Agreement. Plaintiffs requested fees in their complaint. They did so in their C.R.C.P. 26(a)(1) disclosures, in which they expressly stated that they were seeking "reasonable attorney fees pursuant to the written agreement between the parties." And they did so in their written closing

12

argument, when they reiterated their request for "their attorney fees and costs incurred in prosecuting this matter."

¶29     Plaintiffs' contemporaneous actions and course of performance speak louder than their post-judgment words. *Cf. Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1315 (Colo. 1984) (noting that extrinsic evidence of the parties' performance under a contract before any controversy arose is indicative of their intent at the time of contracting). Indeed, it was only after the water court ruled against them and in defendant's favor on all claims in this case that plaintiffs changed their position and argued that their claims did not implicate the fee-shifting provision of the Settlement Agreement. Having themselves sought attorney fees under that provision, plaintiffs tacitly acknowledged that their claims sought to enforce the Settlement Agreement's terms. Having done so, plaintiffs cannot now take the opposite position, merely because their lack of success at trial rendered them liable for defendant's attorney fees under the Settlement Agreement.

¶30     For these reasons, we conclude that defendant is entitled to attorney fees pursuant to section 13(a) of the Settlement Agreement.

### III.  Conclusion

¶31     Because (1) section 13(a) of the Settlement Agreement provided that the prevailing party in an action to enforce, by any means, any of the terms of that Agreement shall be awarded reasonable attorney fees; (2) plaintiffs' claims, in substance, sought to enforce the Agreement; (3) plaintiffs' own pleadings in this case evinced their understanding of this fact; and (4) defendant prevailed on all claims below, we conclude that defendant is entitled to recover his attorney fees in this case.

13

¶32     Accordingly, we reverse the water court's order denying an award of such fees, and we remand this case to that court with instructions that the court determine and award the reasonable attorney fees that defendant incurred at trial and in these appellate proceedings.