The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 17, 2020

## 2020COA139

## No. 19CA0661, *Hess v. Hobart* — Real Property — Mineral Estates

A division of the court of appeals considers whether a
reservation of "a life estate in all mineral rights" in a deed and
purchase contract is ambiguous, and what rights are conferred by
the plain language.

The division concludes the phrase "a life estate in all mineral
rights" is unambiguous and confers on the life tenant all mineral
rights that may be associated with the minerals, including the
power to enter oil and gas leases without consent of the
remaindermen and to retain all income from those leases.

The division also concludes that the common law open mines
doctrine and the Uniform Principal and Income Act of 1955,
sections 15-1-451 to -467, C.R.S. 2019, do not apply in this case to

adjust the division of income payments that may be gained from the minerals, such as income from an oil and gas lease, between the life tenant and remaindermen.

COLORADO COURT OF APPEALS                                      **2020COA139**

Court of Appeals No. 19CA0661
Weld County District Court No. 18CV30978
Honorable Marcelo A. Kopcow, Judge

Troy Hess and Shana Hess,

Plaintiffs-Appellants,

v.

Judith Ann Hobart,

Defendant-Appellee.

ORDER AFFIRMED

Division I
Opinion by JUDGE TAUBMAN*
Johnson and Vogt*, JJ., concur

Announced September 17, 2020

Chipman Glasser, LLC, Rin Karns, Denver, Colorado; McDonough Law, LLC,
Crystal McDonough, Loveland, Colorado; D. Scott Slawson, Timnath, Colorado,
for Plaintiffs-Appellants

Peters Schulte Odil & Wallshein, LLC, Jennifer L. Peters, Nathaniel Wallshein,
Greeley, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3) and § 24-51-1105, C.R.S. 2019.

¶ 1    In this dispute concerning the reservation of a life estate in "all mineral rights" in a deed and contract, plaintiffs, Troy and Shana Hess (the Hesses), appeal the district court's judgment dismissing their complaint against defendant, Judith Ann Hobart.

¶ 2    Because we conclude that the purchase contract and the deed unambiguously reserved a life estate in all mineral rights to Hobart, including the power to enter into oil and gas leases without the consent of the Hesses and to retain all the income from those leases, we affirm the dismissal of the Hesses' action.

## I.    Background

¶ 3    This dispute involves mineral interests in Weld County.  On February 17, 2005, the Hesses entered into a contract with Hobart to buy and sell real estate, pursuant to which the Hesses purchased 160 acres of vacant land from Hobart.  The contract contained a provision that "[s]eller [Hobart] reserve[d] a life estate in all mineral rights on the property including, but not limited to all oil, gas, hydrocarbons, and any other minerals."  On February 25, 2005, Hobart conveyed the land to the Hesses by warranty deed.  The deed contained a reservation clause, which stated, as relevant here, "except grantor [Hobart] reserves a life estate in all mineral rights

1

on the property including but not limited to all oil, gas, hydrocarbons and any other minerals."

¶ 4     Following the sale, the Hesses alleged the following in their amended complaint: (1) Hobart had entered into three oil and gas leases and was negotiating a fourth; (2) in 2010, Hobart signed a lease with Hoover & Stacy, Inc.[1]; (3) on September 20, 2010, the Hesses signed a letter ratifying the Hoover & Stacy lease,[2] having been advised by Hoover & Stacy that the Hesses were not entitled to any income from the lease; (4) in 2014, Hobart signed a lease with Extraction Oil and Gas, LLC; (5) in 2018, Hobart signed a lease with Bur Oak Oil and Gas, LLC; (6) the Hesses did not ratify the last two leases, alleging they were unaware of the leases and did not negotiate or agree to the leases' terms; and (7) in 2018, the Hesses became aware that Hobart was negotiating a fourth lease with Edge Energy, LLC.

¶ 5     In May 2017, the Hesses had a "chance conversation with a landman in the Weld County Clerk and Recorder's Office," where

---

[1] Hoover & Stacy, Inc. is a land company that deals with oil and gas leases.

[2] The ratification letter is not in the record on appeal.

they learned they might possess rights to income and bonuses as remaindermen of Hobart's life estate in the minerals.

¶ 6 As a result, in October 2018, the Hesses brought multiple claims against Hobart: (1) declaratory judgment to clarify their property ownership rights; (2) declaratory judgment to clarify their rights in the Bur Oak lease; (3) breach of fiduciary duty in violation of the Uniform Principal and Income Act of 1955 (UPIA), sections 15-1-451 to -467, C.R.S. 2019; (4) conversion; (5) civil theft; (6) fraud; (7) negligence; (8) breach of contract; (9) breach of fiduciary duty (constructive trust); and (10) accounting.

¶ 7 The district court granted Hobart's motion to dismiss the Hesses' amended complaint under C.R.C.P. 12(b)(5). In a thorough, well-reasoned opinion, the district court found the deed unambiguously conveyed a life estate in the mineral interests to Hobart:

> Defendant [Hobart] reserved "all mineral rights". . . . This is expansive language that conveys neither limitation nor surrender of rights in the mineral interest.
>
> . . . .
>
> [T]he provisions contain no ambiguity. Again, [Hobart] reserved "all mineral rights," which

3

> includes the right to explore, drill, and enter leases to develop the Property's minerals. There is no question of whether . . . oil and gas are minerals, whether development is a mineral right, or whether "all" means less than all. Although the reservation's brevity may have come at the expense of some litigation, it was clear, nonetheless.

The district court further held, based on the language of the deed, that Hobart was not required to seek the Hesses' consent prior to entering into any oil and gas leases and could dispose of the mineral interests as she saw fit.

## II. Interpretation of the Phrase "All Mineral Rights"

¶ 8      On appeal, the Hesses contend the district court erred in dismissing the complaint because it ignored their rights under various principles of oil and gas law. They argue, for example, that the UPIA and the open mines doctrine give them a cause of action against Hobart for "wasting" the life estate's corpus without permission, absent an explicit agreement to the contrary.[3]

---

[3] "Waste is injury to the reversionary interest in land caused by the wrongful act of one lawfully in possession." *In re Estate of Downing*, 461 S.W.3d 231, 240 (Tex. App. 2015); *see also Fed. Deposit Ins. Corp. v. Mars*, 821 P.2d 826, 831 (Colo. App. 1991).

¶ 9     Hobart responds that the phrase "a life estate in all mineral rights" is unambiguous that the UPIA does not apply because it addresses only situations arising in the trusts and estates context, not the deed or contract between the parties here; and that the open mines doctrine does not override the parties' agreements in the deed and the contract for purchase and sale.[4]

¶ 10    As explained below, we conclude that the phrase "a life estate in all mineral rights" unambiguously conveys a life estate in exactly that to Hobart, and that the broad language does not contemplate any surrender of those rights to the Hesses, or any sharing of income with the Hesses that Hobart receives from minerals during her life.

A.    Standard of Review

¶ 11    We review de novo a trial court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim. *Bewley v. Semler*, 2018 CO 79, ¶ 14, 432 P.3d 582, 586. In doing so, we accept all factual allegations in the complaint as true, viewing them in a light

---

[4] Because it was not raised by the parties, we need not address whether the purchase contract terms merged into the warranty deed. *See Feit v. Donahue*, 826 P.2d 407, 412 (Colo. App. 1992).

most favorable to the plaintiff. *Id.* Similarly, we accept as true factual allegations set forth in documents attached to or referenced by the complaint. *Prospect Dev. Co., Inc. v. Holland & Knight, LLP*, 2018 COA 107, ¶ 11, 433 P.3d 146, 149. To survive a motion to dismiss for failure to state a claim, a plaintiff must state a claim for relief that is plausible (not speculative) on its face. *See, e.g., Gandy v. Williams*, 2019 COA 118, ¶ 22, 461 P.3d 575, 582-83; *see also Warne v. Hall*, 2016 CO 50, ¶ 24, 373 P.3d 588, 595.

### B. Applicable Law

¶ 12    We review de novo the interpretation of both a deed, *Owens v. Tergeson*, 2015 COA 164, ¶ 17, 363 P.3d 826, 830, and the interpretation of a contract, *Klun v. Klun*, 2019 CO 46, ¶ 18, 442 P.3d 88, 92 (citing *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000)).

¶ 13    There are several considerations when interpreting a contract: (1) a court's primary goal is to determine and give effect to the parties' intent; (2) if possible, that intent is to be determined from the language of the contract itself; (3) if the language of the contract is unambiguous, it will be deemed to express the intent of the parties; and (4) the contract's plain meaning will be enforced as

written.  *See Klun,* ¶ 18, 442 P.3d at 92.  Extrinsic evidence may be used to review the surrounding circumstances and to determine whether an ambiguity exists in a contract, just as with a deed.  *See Ad Two,* 9 P.3d at 381.

¶ 14     Like contracts, deeds are generally construed in accordance with the general rules of construction of written instruments.  *Owens,* ¶ 15, 363 P.3d at 830.  Thus, if a deed is unambiguous, its terms must be enforced as written.  *Id.*

¶ 15     In determining whether an ambiguity exists in the first instance, we examine the instrument's language, giving the words employed their plain and generally accepted meanings.  *Meyerstein v. City of Aspen,* 282 P.3d 456, 468 (Colo. App. 2011).

¶ 16     A life estate can be created by valid deed, contract, or lease.  *Moss v. Moss,* 175 P.3d 971, 974 (Okla. Civ. App. 2007); *see also* § 38-30-101, C.R.S. 2019 (allowing any person entitled to hold real estate to be authorized to convey it "by deed"); *Kendall v. Wiles,* 483 P.2d 388, 389 (Colo. App. 1971) (not published pursuant to C.A.R. 35(f)) ("A life estate may be created by a present conveyance to the grantee, reserving to the grantor a life estate.  The reservation should appear *in the deed* as an exclusion . . . .") (emphasis added).

No particular words are necessary to create a life estate because courts look to the intentions of the parties to the deed.  *See* 31 C.J.S. *Estates* § 38, Westlaw (database updated June 2020); *see also Keith v. Kinney*, 140 P.3d 141, 146 (Colo. App. 2005) ("Our paramount purpose in construing any deed is to ascertain the parties' intent.").

¶ 17    In conveyances of real property, it is common for a property owner to sever and separately convey the minerals from the surface, creating separate and distinct estates.  *See Notch Mountain*, 898 P.2d at 556.  A life estate is an acceptable means to convey a mineral interest.  *See Keller Cattle Co. v. Allison*, 55 P.3d 257, 262 (Colo. App. 2002) ("The duration of a mineral interest is like that of common law estates, namely, in fee simple, in fee simple determinable, for life, or for a fixed term of years.").

## C.    Analysis

¶ 18    We conclude that the plain language in the deed and contract unambiguously reserved a life estate in "all mineral rights" to Hobart, meaning that Hobart has the right to produce the minerals without consent of the Hesses and to retain all income from them.

¶ 19    The plain language of the deed and contract is unambiguous. As noted by the district court, "there is no question" as to "whether 'all' means less than all." "All" is an unambiguous term. *See City of Grand Junction v. Ute Water Conservancy Dist.*, 900 P.2d 81, 91 (Colo. 1995); *see also Hudgeons v. Tenneco Oil Co.*, 796 P.2d 21, 23 (Colo. App. 1990) ("'All' is an unambiguous term and means the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with 'every' and 'each.'"). Therefore, whatever mineral rights pertained to Hobart's reservation of a life estate, all of them are available to Hobart.

¶ 20    Unfortunately for the Hesses, "all" rights include "the right to enter the land to explore, drill, produce, and otherwise carry on mining activities," as stated in *Keller Cattle Co.*, 55 P.3d at 262. The Hesses argue that Hobart's right to carry on mining activities is modified by her reservation of a life estate. However, while a life estate indeed limits her rights to her lifetime, during that lifetime she possesses "all mineral rights." *See Moeller*, ¶ 16, ___ P.3d at ___ ("A conveyance of real property, which is generally defined and designated in the deed's granting clause, passes all title to the land and the underlying mineral deposits, *except those interests explicitly*

9

*held back.*" (citing *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249-51 (Colo. 1990))) (emphasis added).

¶ 21 In light of our conclusion that the language here is unambiguous, we need not engage in further examination of the surrounding circumstances. *See Lazy Dog*, 965 P.2d at 1236.

¶ 22 The Hesses contend that, notwithstanding the unambiguous language in the deed and contract, because an explicit agreement as to division of income from the produced minerals was never made, the open mines doctrine and Colorado's UPIA "fill in" the gaps in the deed. However, based on our holding that the plain language is unambiguous, we necessarily reject the Hesses' arguments concerning the open mines doctrine, the UPIA, the general practice of dividing rights between a life tenant and remaindermen, and that an agreement was never made. We disagree with the Hesses for four reasons.

¶ 23 First, the common law open mines doctrine dictates that "when a [mineral] lease is in existence at the time the life estate is created, the life tenant and the remainderman take the property in the condition that existed at the time of the creation of the estate" (i.e., "[t]he life tenant is entitled to the royalties from the lands

during his or her life time").  Angela L. Franklin & David B. Hatch, *Dotting Your I's and Crossing Your T's: Ensuring Proper Payment and Execution*, 3 Rocky Mountain Min. L. Inst. 3, 3-22 (2018); *see also Welborn v. Tidewater Associated Oil Co.*, 217 F.2d 509, 511-12 (10th Cir. 1954); *Reese v. Reese-Young*, 938 N.W.2d 405, 411-12 (N.D. 2020) (adopting the open mines doctrine by statute and discussing its existence in other jurisdictions).  The Hesses maintain that the converse of the open mines doctrine applies here — that because no leases existed when Hobart reserved her life estate, she was not entitled to any income from mineral leases entered after the life estate was created.

¶ 24    However, the open mines doctrine applies only when a lease is created before  the creation of the life estate, a factual situation that indisputably does not exist here.

¶ 25    Second, the Hesses argue that the UPIA applies because the UPIA contemplates divisions of income payments between life tenants and remaindermen regarding mineral production.  We disagree.  Rather, we agree with the district court that the UPIA applies only in the context of wills, trusts, and estates.  We note in this regard that the UPIA is in title 15, which deals with those

11

subjects, not in title 38, which addresses principles of real property law.  Significantly, the Hesses have not cited any authority to the contrary.

¶ 26    Third, we are not persuaded by the Hesses' contention that the general rule of dividing rights and income between a life tenant and remaindermen applies here.

¶ 27    While contracting parties commonly divide rights between the life tenant and the remaindermen, that was not done here.  As one commentator has noted, "[b]y far the simplest solution to this problem is to obtain a stipulation from the holders of the present and future estates setting forth with clarity the manner in which these payments are to be divided."  1B Stephen A. Hess, *Colorado Practice Series: Methods of Practice* § 11:2, Westlaw (7th ed. database updated June 2020); *see also Hobson v. Cimarex Energy Co.*, 453 P.3d 482, 485 (Okla. 2019) (Kauger, J., specially concurring) (acknowledging "that grantors can avoid this problem by ensuring the document creating the life estate restricts the part of the remainderman. . . .  The person conveying the life estate has great discretion in any conditions [he or she] wish[es] to attach . . .").  Because the parties here did not agree to a division of

mineral rights, the general practice is irrelevant. Instead, we enforce the contract according to its plain language.

¶ 28     Finally, the Hesses contend that each oil and gas lease made subsequent to the deed, except for the one they ratified, was made without their permission, and because there was no agreement to that effect, the Hesses are entitled to obtain damages for waste. Again, we disagree.

¶ 29     When a life estate is created, it is incumbent upon the life tenant to avoid wasting the estate's corpus to the detriment of the remaindermen. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Mars*, 821 P.2d 826, 831 (Colo. App. 1991). Waste originally "referred to any unauthorized destruction or severance of improvements, trees, minerals, or other corporeal hereditaments on or from the land." *Id.* The concept has evolved into a legal means by which any concurrent nonpossessory holder of an interest in land may prevent or restrain harm to land by the party in possession, such as in a life tenant and remainderman relationship, as here. *See id.*

¶ 30     Thus, as a rule, the life tenant must not waste the mineral interests to prevent the remaindermen from also enjoying the

mineral interests when they come into possession. *Id.*; *see also In re Estate of Downing,* 461 S.W.3d 231, 240 (Tex. App. 2015).

¶ 31 However, especially in the oil and gas context, life tenants and remaindermen often agree to alter the rule. For example, "[a] life tenant and the remainderman may lease the land by a joint lease[,] and they may agree as to the division of the rents and royalties." *Welborn,* 217 F.2d at 510 (footnote omitted). "In the absence of such an agreement, the life tenant is not entitled to any part of the royalties, but is entitled only to the income from such royalties." *Id.* Here, however, there was no agreement that "all mineral rights" would mean something less than all.

### III. C.R.C.P. 12(b)(5) Motion

¶ 32 All ten causes of actions brought by the Hesses rest entirely on their contention that no explicit agreement was made as to division of income from the mineral production reserved in Hobart's life estate. However, as we have concluded, the deed and contract unambiguously give Hobart unfettered rights concerning the minerals during her life tenancy. Therefore, the district court properly dismissed the Hesses' claims.

¶ 33    For the Hesses' first and second claims of declaratory judgment regarding their ownership in the mineral interests, they do not have any rights that may be exercised until the life estate ends and they come into possession, because "all mineral rights" belong to Hobart for the duration of her life.[5]

¶ 34    Next, Hobart cannot be acting illegally if she has full rights to produce the minerals during her lifetime.  Therefore, she could not be in breach of any fiduciary duty under the UPIA (even if it applied); and she cannot be liable for conversion, theft, fraud, negligence, breach of contract, breach of fiduciary duty requiring a constructive trust, or an accounting.

¶ 35    As a matter of law, there are no plausible claims here, and the district court therefore did not err by dismissing the Hesses' claims under C.R.C.P. 12(b)(5).

---

[5] Other courts in Colorado have held that when the court rules against the plaintiff in a declaratory judgment action, the court should enter a declaratory judgment rather than sustain a motion to dismiss.  *See, e.g., Karsh v. City & Cty. of Denver*, 176 Colo. 406, 409-10, 490 P.2d 936, 938 (1971); *Martinez v. Colo. Dep't of Human Servs.*, 97 P.3d 152, 156 (Colo. App. 2003).  However, we need not decide whether the district court should have done so here, as the result of entering a declaratory judgment would have been the same as dismissal of the Hobarts' claim.

## IV. Appellate Attorney Fees and Costs

¶ 36 As a final matter, Hobart requests appellate attorney fees, primarily because the contract signed by the parties contains a provision awarding costs and attorney fees to the prevailing party. Section 18(c) of the contract states, "[i]n the event of any arbitration or litigation relating to the contract, the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorney fees." The Hesses do not dispute the contract's provision, stating only that the applicability of this provision depends on the outcome of this appeal.

¶ 37 Hobart further urges us to grant an award of attorney fees and costs under section 13-17-201, C.R.S. 2019, for a successful defense against a tort action, and under section 13-17-102, C.R.S. 2019, for the Hesses' claim having lacked substantial justification.

¶ 38 We need not determine whether Hobart is entitled to attorney fees and costs under either statute because Hobart is entitled to reasonable appellate attorney fees and costs by virtue of the parties' contract.

16

## V.     Conclusion

¶ 39     The district court's judgment of dismissal under C.R.C.P. 12(b)(5) is affirmed, and the case is remanded to the district court to determine the amount of Hobart's reasonable appellate attorney fees on appeal.

JUDGE JOHNSON and JUDGE VOGT concur.