# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 106

**APRIL TERM, A.D. 2020**

**August 18, 2020**

ROY CHARLES SMITH and the
ESTATE OF CURT ALLEN SMITH,

Appellants
(Plaintiffs),

v.

B&G ROYALTIES; ROY G. BARTON,
JR.; MARK E. HODGE and WILLIAM J.
MCCAW,

Appellees
(Defendants).

S-19-0267

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellants:*
Thomas F. Reese, David E. Shields, and Will Reese, Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

*Representing Appellees:*
Lucas Buckley, Hathaway & Kunz, LLP, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   Appellants Roy Charles Smith and the Estate of Curt Allen Smith sought a declaratory judgment and to quiet title in certain Campbell County, Wyoming property, asserting ownership of a royalty interest.  The district court granted summary judgment and issued a Declaratory Judgment and Judgment Quieting Title to Real Property in favor of Appellees, concluding that Appellants' predecessors in title, Charles B. Smith (Charles) and his wife (Marion) conveyed a 1/8 mineral interest to Roy G. Barton in 1989.  We affirm.

## *ISSUES*

[¶2]   The issues are:

> 1.  Did Charles and Marion convey an unrestricted 1/8 mineral interest to Roy G. Barton, Jr. by warranty deed in 1989?
>
> 2.  Are Appellees entitled to attorneys' fees and costs?

## *FACTS*

[¶3]   The facts are undisputed.  From 1970 to 2018, conveyances of the property at issue here were made as follows:

1.  July 30, 1970 Royalty Deed—Myrtle and Laurence Richmond conveyed to Charles a "Three and One-Eighth per cent . . . Landowner's royalty of all of the oil and of all the gas produced and saved from" land located in Campbell County described as:

> Township 42 North, Range 71 West 6th P.M.
> Section 31: Lots 1, 2, 3, 4, E½W½
> Containing 314.56 acres more or less.

2.  February 19, 1976 Mineral Deed—Robert and Mary McKee conveyed to Charles "an undivided one-fourth (1/4th) interest in and to all of the oil, gas and other minerals in and under and that may be produced" from Campbell County lands described as:

> Township 42 North, Range 71 West, 6th P.M.
> Section 31: Lots 1, 2, 3, & 4; E½W½
> [C]ontaining 314.54 acres, more or less[.]

1

3. June 25, 1976 Royalty Deed—Charles conveyed to F. H. Merback "AN UNDIVIDED 1.0416% interest in and to all of the oil, gas and other minerals, in, under and upon" the land described as:

> Township 42 North, Range 71 West, 6th P.M.
> Section 31: Lots 1, 2, 3, 4, E½W½
> Containing 314.56 acres more or less.

The deed reserved to Charles "the exclusive right to lease said lands, or any part thereof, for oil and gas purposes, without interference . . . upon the part of the grantee [F. H. Merback]."

4. December 1, 1983 Mineral Deed—Charles conveyed to W. Allene Smith "an undivided 50% of grantor's interest now owned and to all of the oil, gas and other minerals in and under and that may be produced" from lands in:

> Township 42 North, Range 71 West, 6th P.M.
> Section 31: Lots 1, 2, 3, 4, E½W½
> .    .    .
> [C]ontaining 314.54 acres, more or less[.]

On January 6, 1987, Charles executed a corrective deed to W. Allene Smith containing conveyance language identical to the 1983 deed.[1]  Both deeds conveyed the right to ingress and egress for the purposes of drilling and developing the land and both state "it is the intention of the grantor to convey one-half of the minerals it now owns in the described lands to the grantee."

5. December 1, 1983 Royalty Deed—Charles also conveyed to W. Allene Smith "an undivided one-half of his interest . . . royalty of all of the oil and of all the gas produced and saved" from the lands described as:

> Township 42 North, Range 71 West, 6th P.M.
> Section 31: Lots 1, 2, 3, 4, E½W½
> .    .    .
> Containing 314.56 acres, more or less.

That deed specifically states the grant is "Subject to that certain Royalty Deed" from the Richmonds, #1 above.

---

[1] The corrective deed made corrections to other mineral interest conveyances identified in the December 1, 1983 deed.  Those conveyances are not relevant here.

6. January 5, 1987 Mineral Deed—Charles conveyed "an undivided 100%" of his "interest now owned and to all of the oil, gas and other minerals in and under and that may be produced from" land, inclusive of the 314.54 acres of land described in each of the preceding conveyances, to his wife Marion.

7. May 29, 1989 Mineral Deed—Charles and Marion conveyed to Roy G. Barton, Jr. "an undivided one-eighth (1/8th) interest in and to all of the oil, gas and other minerals in and under and that may be produced from":

> Township 42 North, Range 71 West, 6th P.M.
> Section 31, Lots 1, 2, 3, 4, E½W½
>
> .     .     .
>
> [C]ontaining 314.56 acres, more or less[.]

[¶4]    The May 29, 1989 deed stated it "is the intent of Grantor to convey to Grantee 39.32 net mineral acres" and conveyed the right of ingress and egress for mining activities along with the right to market and remove minerals from the land. The May 29, 1989 deed also contained the following warranty language:

> [Charles and Marion] do hereby warrant said title to [Mr. Barton,] his heirs, executors, administrators, personal representatives, successors and assigns forever and do hereby agree to defend all and singular the said property unto [Mr. Barton,] his heirs, successors, executors, personal representatives, and assigns against every person whomsoever claiming or to claim the same or any part thereof.

On June 7, 1989, Charles and Marion executed a Corrective Mineral Deed to Mr. Barton amending the legal description from the May 29, 1989 deed. The corrected description set forth the acreage described in each transfer above but added additional acres. The corrective deed specified that it contained "320.68 acres, more or less" and stated that it was Charles and Marion's intent to convey "40.085 net mineral acres." The corrective deed contained the same warranty language as the May 29, 1989 deed. We refer to the May 29, 1989 Mineral Deed and the June 7, 1989 Corrective Mineral Deed collectively as the 1989 Deed.

8. October 10, 2017 Decree of Distribution—following Charles's death, the Converse County district court entered an order of distribution, transferring his "oil and gas interest" in the property at issue here as described in the preceding conveyances to his two sons, Roy Smith and Curt Smith (Curt Smith died and his estate along with Roy Smith, the Appellants in this case, are referred to here as the Sons).

3

9. January 11, 2018 Quit Claim Deed—Marion conveyed to the Sons "all of her right, title and interest" in the property described as:

> Township 42 North, Range 71 West, 6th P.M.
> Section 31: Lots 7, 8, 9, 10, 15, 16, 17, 18,
> formerly described as: W1/2

The deed describes the interest as a "landowner's royalty as set forth, the said oil and gas so produced and saved from said lands . . . ."

[¶5]   On September 21, 2018, the Sons filed this action seeking declaratory judgment and to quiet title to a 1.0417% royalty interest[2] in the property described in the conveyances *supra*. The action named B&G Royalties, Roy G. Barton, Jr., Mark E. Hodge, and William J. McCaw as defendants. Roy G. Barton, Jr. is the original grantee and the remaining defendants are successor grantees. We refer to the defendants/appellees collectively as B&G. B&G filed an answer and counterclaim, also seeking a declaratory judgment, quiet title, and other alternative relief. The parties filed cross-motions for summary judgment. After a hearing, the district court granted summary judgment in favor of B&G followed by a declaratory judgment and judgment quieting title in B&G to a 1/8 mineral interest "including all royalty interests . . . in said 1/8 mineral interest." The Sons appeal.

## DISCUSSION

[¶6]   The district court determined that the 1989 Deed was unambiguous, and Charles and Marion conveyed a 1/8 mineral interest in the described property—including the royalty interest—to B&G, reserving nothing. On appeal, the Sons argue that the mineral interest conveyed by the 1989 Deed did not include the royalty interest. They assert Charles and Marion retained the royalty interest, and it was distributed to the Sons out of Charles's estate and by Marion's quit claim deed. B&G contends that the 1989 Deed unambiguously included the 1/8 royalty interest and that B&G is entitled to attorneys' fees and costs incurred in this appeal.

### I.   Did Charles and Marion convey an unrestricted 1/8 mineral interest to Roy G. Barton, Jr. by warranty deed in 1989?

---

[2] A royalty interest is one interest contained in the "bundle" of interests owned by the owner of a mineral fee. *Boley v. Greenough*, 2001 WY 47, ¶ 15, 22 P.3d 854, 859 (Wyo. 2001). A royalty interest includes the right to a share of production that is not chargeable to production costs, but excludes rights to explore, grant leases, and receive bonuses or delay rentals. *Id.* ¶ 14, 22 P.3d at 858; *see also* Wyo. Stat. Ann. § 30-5-304(a)(vii) (defining a "Royalty" as "the mineral owner's share of production, free of the costs of production").

4

## A. Standard of Review

[¶7]     Summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  W.R.C.P. 56(c); *Montierth v. Deutsche Bank Nat'l Tr. Co. for Ameriquest Mortg. Sec. Tr. 2005-R7, asset-backed pass-through certificate, series 2005-R7*, 2018 WY 41, ¶ 6, 415 P.3d 654, 658 (Wyo. 2018).

> We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling.  *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016).  This Court reviews the same materials and uses the same legal standard as the district court.  *Id.*  The record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record.  *Id.*  A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.  *Id.*

*Bd. of Trustees of Laramie Cty. v. Bd. of Cty. Comm'rs of Laramie Cty.*, 2020 WY 41, ¶ 6, 460 P.3d 251, 254 (Wyo. 2020) (quoting *Estate of Weeks by and through Rehm v. Weeks-Rohner*, 2018 WY 112, ¶ 15, 427 P.3d 729, 734 (Wyo. 2018)).

[¶8]     Warranty deeds are contracts, *Caballo Coal Co. v. Fid. Expl. & Prod. Co.*, 2004 WY 6, ¶ 11, 84 P.3d 311, 314 (Wyo. 2004), and are construed by examining the "specific language of the deed."  *Gilstrap v. June Eisele Warren Tr.*, 2005 WY 21, ¶ 12, 106 P.3d 858, 862 (Wyo. 2005) (citation omitted).  Summary judgment is appropriately entered in the interpretation of a contract when the contract language is clear and unambiguous.  *Trabing v. Kinko's, Inc.*, 2002 WY 171, ¶ 20, 57 P.3d 1248, 1254 (Wyo. 2002); *Questar Expl. & Prod. Co. v. Rocky Mountain Res., LLC*, 2017 WY 10, ¶¶ 26–27, 388 P.3d 523, 530 (Wyo. 2017); *see also McGee v. Caballo Coal Co.*, 2003 WY 68, ¶ 6, 69 P.3d 908, 910 (Wyo. 2003).

## B. Rules of Contract Interpretation

[¶9]     We apply general principles of contract interpretation to deeds conveying and reserving interests in oil and gas, including royalty interests.  *See Caballo*, ¶ 11, 84 P.3d at 314; *Gilstrap*, ¶ 12, 106 P.3d at 862.  When language in a deed

> is clear and unambiguous, our inquiry is limited to the four
> corners of the document, giving the words contained therein

their ordinary meaning. The parties are free to agree to whatever lawful terms they desire, and we will not rewrite the agreement under the guise of judicial construction. Only when the contract is ambiguous do we apply our rules of construction. A contract is ambiguous if indefiniteness of expression or double meaning obscures the parties' intent.

*Pennaco Energy, Inc. v. Sorenson*, 2016 WY 34, ¶ 41, 371 P.3d 120, 129–30 (Wyo. 2016) (internal citation omitted). We construe the contract as a whole and give effect to its language "in accordance with the meaning which that language would convey to reasonable persons at the time and place of its use." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo. 2010) (citation omitted). We look "to the surrounding circumstances, the subject matter, and the purpose of the agreements to ascertain the intent of the parties at the time the agreements were made." *Pennaco Energy, Inc. v. KD Co. LLC*, 2015 WY 152, ¶ 26, 363 P.3d 18, 26 (Wyo. 2015) (citing *Stone v. Devon Energy Prod. Co., L.P.*, 2008 WY 49, ¶ 18, 181 P.3d 936, 942 (Wyo. 2008)). "Extrinsic evidence can be considered in interpreting an unambiguous contract to the extent it involves facts and circumstances surrounding execution of the contract." *KD*, ¶ 26, 363 P.3d at 26 (citing *Wells Fargo Bank Wyoming, N.A. v. Hodder*, 2006 WY 128, ¶ 31, 144 P.3d 401, 412 (Wyo. 2006)).

## C. Analysis

[¶10] It is undisputed that Charles first obtained a 3 1/8% royalty in all the minerals in the described tract (314.56 acres) in Section 31, Township 42 North, Range 71 West, 6th P.M., Campbell County, Wyoming. He later obtained an undivided 1/4 fee interest in all the minerals in that same tract. Beginning in 1976 and continuing until 1989, he made various conveyances, appearing to always consider his royalty interest as unbundled from his fee interest. Eventually Charles and Marion transferred an undivided 1/8 interest in the minerals to Roy G. Barton, Jr., using a warranty "mineral deed"—the 1989 Deed.

[¶11] A "mineral fee," sometimes referred to as a "mineral estate" or "mineral interest," is "an estate in fee simple in and to the minerals." *Picard v. Richards*, 366 P.2d 119, 123 (Wyo. 1961) (citation omitted). A conveyance or reservation of a mineral fee gives title to the minerals in place. *Id.* (citation omitted). "The ownership of an *unrestricted* mineral interest includes all the incidents of ownership, some of which are the right to execute oil, gas and mineral leases and the right to receive bonuses, rentals **and royalties**." *Id.* (emphasis added).[3] Mineral fee owners "have the capacity to create and

---

[3] The ownership of a mineral fee includes five essential interests: the right to develop, the right to lease, the right to receive bonus payments, the right to receive delay rentals, and the right to receive royalty payments. *Reed v. Maltsberger/Storey Ranch, LLC*, 534 S.W.3d 51, 56 (Tex. App. 2017) (citation

convey any one or all of a myriad of separately identifiable interests in oil and gas under their property, including royalty interests." *Boley v. Greenough*, 2001 WY 47, ¶ 15, 22 P.3d 854, 859 (Wyo. 2001); *see also Williams v. Watt*, 668 P.2d 620, 624 (Wyo. 1983) ("A landowner has the power to create separate interests in oil and gas by grant or exception . . . .").

[¶12]  Notably, Charles and Marion did not reserve any separately identifiable interests. The 1989 Deed conveyed "an undivided one-eighth (1/8th) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" the land described in the deed to B&G.  The terms "in and under" and "produced from," absent any qualifying or limiting language, create a mineral fee interest.[4]  *See* Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One-Eighth Royalty and Other Stories*, 33 St. Mary's L.J. 1 (2001) (citing cases); 38 Am. Jur. 2d *Gas and Oil* § 30 (2019).

[¶13]  The 1989 Deed further stated, "[i]t is the intent of Grantor to convey to Grantee 40.085 net mineral acres . . . together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing" the land.  "A conveyance purporting to transfer to a grantee the right of ingress and egress for the purpose of mining, drilling and exploring is by definition a 'mineral interest' rather than a royalty interest."  38 Am. Jur. 2d *Gas and Oil* § 30, at 445–46; *see also* Laura H. Burney, *supra* at 47 n.265.

[¶14]  The 1989 Deed contains no language reserving any interest to Charles or Marion. "A conveyance of a mineral estate need not dispose of all interests; individual interests can be held back, or reserved, in the grantor."  *Reed v. Maltsberger/Storey Ranch, LLC*, 534 S.W.3d 51, 56 (Tex. App. 2017) (quoting *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995)).  "However, when an undivided mineral interest is conveyed . . . , it is presumed that all attributes remain with the mineral interest unless a contrary intent is expressed."  *Id.* (quoting *French*, 896 S.W.2d at 797).  Absent limiting language, that interest necessarily includes the right to receive royalties.  *Picard*, 366 P.2d at 123.  The plain language of the 1989 Deed conveyed an unqualified mineral interest to Roy G. Barton, Jr.

[¶15] Notwithstanding the 1989 Deed's plain language, the Sons argue that Charles and Marion could not have intended to convey an unrestricted mineral estate because Charles had always kept his royalty interests separate from his mineral interests and those

---

omitted).

[4]  Conversely, the conveyance or reservation of "oil and gas produced and saved" creates a nonparticipating royalty interest.  *Boley*, ¶ 14, 22 P.3d at 858 (quoting *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 977 (Wyo. 1994) (citing 1 Eugene Kuntz, *The Law of Oil and Gas* § 16.2, at 483 (1987))).

interests never merged. They assert that Charles conveyed mineral interests by "mineral deeds" and royalty interests by "royalty deeds,"[5] and that these unbundled interests never merged. We need not decide the question of merger because the Sons are estopped from asserting Charles and Marion conveyed any less than an unrestricted 1/8 mineral interest.

[¶16] We have long held that estoppel by deed "precludes a party to the deed and also those in privity with him from asserting as against the other party thereto and his privies any right or title in derogation of the deed or from denying the truth of any material fact asserted in it." *Kennedy Oil v. Lance Oil & Gas Co., Inc.*, 2006 WY 9, ¶ 28, 126 P.3d 875, 883–84 (Wyo. 2006) (quoting 3 A. James Casner ed., *American Law of Property* § 15.18, at 841 (1952)).

> One who assumes to convey an estate by deed will not be heard, for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title, or that none passed by the deed, and he cannot deny the full operation and effect of the deed as a conveyance. In other words, he is estopped to dispute the title granted.

*Kennedy*, ¶ 28, 126 P.3d at 884 (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 12 (2000)).

[¶17] As we explained in *Gilstrap*, if a "grant is made with a warranty deed, the grantor is warranting, or promising, that he owns what the deed purports to convey and if he does not, he is liable for a breach of warranty." *Gilstrap*, ¶ 17, 106 P.3d at 863 (citing 1 Howard R. Williams and Charles J. Meyers, *Oil and Gas Law*, § 311, at 580.29 (2003)); *see also Body v. McDonald*, 79 Wyo. 371, 334 P.2d 513 (1959). We have more typically applied estoppel by deed where a mineral owner makes a grant and also attempts to reserve

---

[5] Charles acquired his interests to the minerals at issue in a piecemeal fashion. *See supra* ¶¶ 3–4. Among the deeds in the chain of conveyances from 1970 to 1989, some are titled "royalty" deeds and others are titled "mineral" deeds. The Sons argue this indicates that Charles kept his interests separately and intended to convey them separately. The language of the deed and not its title governs our inquiry. 1 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law*, § 304.1, at 467 (1990) (opining that an instrument's title is "never given conclusive effect in the construction process and rarely, if ever, has paramount importance"); Laura H. Burney, *supra* at 35 ("[T]he titles of documents generally accord little weight in the interpretation process.").

The Sons also point to a 2004 division order and a 2010 title opinion to support their assertion that Charles and Marion continued to own a royalty interest after executing the 1989 Deed. The Court may consider extrinsic evidence to determine the intent of the parties in forming an unambiguous contract if that evidence "involves facts and circumstances surrounding execution of the contract." *KD*, ¶ 26, 363 P.3d at 26 (citing *Wells Fargo*, ¶ 31, 144 P.3d at 412). The 2004 division order and the 2010 title opinion clearly do not concern "facts and circumstances surrounding execution" of the 1989 Deed. Accordingly, we will not consider that evidence here.

an interest but does not own a sufficient interest to cover both. *Gilstrap*, ¶ 17, 106 P.3d at 863  Applying the *Duhig*[6] rule to those circumstances, the reservation fails to the extent necessary to affect the grant. *Gilstrap*, ¶ 17, 106 P.3d at 863; *Body*, 79 Wyo. 371, 334 P.2d 513.

[¶18]  Here, the owners granted an unrestricted mineral interest without reserving what is argued to be an unbundled, or separate, royalty interest.  The warranty language in the mineral deed estops them and their successors (the Sons) from claiming anything less than an unrestricted 1/8 mineral interest was transferred.  Accordingly, we affirm the judgments recognizing title to an unrestricted 1/8 mineral interest in B&G.

## II.    Are Appellees entitled to attorneys' fees and costs?

[¶19]  W.R.A.P. 10.05(b) provides:

> If the court certifies . . . there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed . . . and taxed as part of the costs in the case.

B&G argues it is entitled to attorneys' fees because the Sons "presented no argument or authority upon which reversal is warranted."

[¶20]  "We are generally reluctant to order sanctions under this rule." *Burnett v. Burnett*, 2017 WY 57, ¶ 9, 394 P.3d 480, 483 (Wyo. 2017).  We will do so, however, if an appeal lacks cogent argument, fails to provide pertinent authority to support the claims of error, or when there is a failure to cite to the record adequately. *Id.*  The Sons' brief complied with our rules, presented cogent legal argument, pertinent case law, and cited to the record.  This is not one of the rare circumstances where sanctions pursuant to W.R.A.P. 10.05 are appropriate.  We decline to certify that there was no cause for appeal and do not award B&G its attorneys' fees.

---

[6]      In *Duhig*, a third party owned an outstanding 1/2 mineral interest in certain land and the grantor owned the surface and the remaining 1/2 mineral interest.  The grantor conveyed the surface to the grantee by warranty deed with a reservation of 1/2 interest in all the minerals under the surface.  The grantor and grantee both claimed the 1/2 mineral interest that was not owned by the third party.  The Texas Supreme Court concluded that the grantee owned the surface and a 1/2 mineral interest, the third party owned the outstanding 1/2 mineral interest, and the grantor owned nothing.

*Acoma Oil Corp. v. Wilson*, 471 N.W.2d 476, 479 (N.D. 1991).  This Court adopted *Duhig* in *Body*, 79 Wyo. 371, 334 P.2d 513; *Gilstrap*, 106 P.3d 858.

## *CONCLUSION*

[¶21] The 1989 Deed conveyed an unrestricted 1/8 mineral interest to B&G. B&G is not entitled to attorneys' fees and costs. Affirmed.