# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 104

APRIL TERM, A.D. 2024

October 4, 2024

PHOENIX CAPITAL GROUP HOLDINGS,
LLC,

Appellant
(Plaintiff),

v.

VELMA WOODS, individually and as
Trustee of the AV Living Trust dated
December 28, 2018,

Appellee
(Involuntary Plaintiff)

and

HUGH DESELMS; PAUL WOODS; and
CHERYL WOODS,

Appellees
(Defendants).

S-24-0011

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
    Aaron D. Bieber, Lucas Evan Buckley, Kari Ann Hartman, Hathaway & Kunz LLP,
    Cheyenne, Wyoming.  Argument by Lucas Evan Buckley.

*Representing Appellee Velma Woods:*
    No appearance.

*Representing Appellee Hugh Deselms:*
Justin A. Daraie, Long Reimer Winegar LLP, Cheyenne, Wyoming.  Argument by Justin A. Daraie.

*Representing Appellees Paul and Cheryl Woods:*
Alexander K. Davison, Michael McDonough Roley, Patton & Davison, LLC, Cheyenne, Wyoming.  Argument by Michael McDonough Roley.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Phoenix Capital Group Holdings, LLC (Phoenix Capital) appeals two district court orders dismissing its claims to recover mineral royalties as a life tenant and its alternative claim to reform the deed that established its life estate.  Finding no error in the court's application of settled law rooted in the doctrine of waste and the statute of limitations, we affirm.

## *ISSUES*

[¶2]    Phoenix Capital raises two issues which we rephrase as:

I.    Whether the district court erred when it concluded Phoenix Capital's life estate in minerals did not include a right to receive royalties.

II.    Whether the district court erred when it concluded Phoenix Capital's deed reformation claim was barred by the statute of limitations.

## *FACTS*

[¶3]    In 1977, Mr. and Mrs. Peterson transferred a parcel of real property to Alva and Velma Woods.  The Petersons retained a life estate in the mineral estate of that parcel, with the remainder to go to the Woods.  While some mineral leasing occurred during that period, no drilling occurred.  When the Petersons died, the mineral and surface estates were reunited, held by Alva and Velma Woods.[1]  In 2003, the couple deeded that entire property to their son Paul Woods and his wife Cheryl Woods, with the understanding that Alva and Velma retained a life estate in the mineral estate.  However, because their 2003 deed did not reserve that life estate, in 2006, without the assistance of counsel, Paul and Cheryl executed a deed conveying a life estate in one-half of the mineral estate to Alva and Velma, with the remainder to Paul and Cheryl.  Alva and Velma then owned a one-half interest in the mineral estate for life and Paul and Cheryl owned the surface estate, a one-half interest in the mineral estate in fee, and the remainderman interest in Alva and Velma's one-half of the mineral estate.

[¶4]    Later in 2006, Paul and Cheryl transferred the surface estate and their remainderman half-interest in the mineral estate to Hugh Deselms, by warranty deed.  They reserved to themselves the one-half mineral interest they held in fee.  Following that conveyance, Alva and Velma owned a one-half interest in the mineral estate for life; Paul and Cheryl owned

---

[1] Because multiple parties in this appeal have the same last name, we respectfully refer to some of the parties by their first names.

1

a one-half interest in the mineral estate in fee; and Mr. Deselms owned the surface estate and the remainderman interest in Alva and Velma's one-half of the mineral estate.

[¶5]    In 2010, Alva and Velma entered a mineral lease with Baseline Minerals.  A few days later, Paul and Cheryl entered a lease with the same company.  In 2015, Paul and Cheryl entered a new mineral lease with HERCO, LLC, and a few days later Alva and Velma did the same.  Shortly thereafter, Mr. Deselms leased his remainderman interest to the same company.  None of those lessees commenced drilling.  In 2019, Paul and Cheryl, Mr. Deselms, and Velma Woods each leased their respective mineral interests to Helis Oil & Gas Company, LLC (Helis).  By this time, Alva had passed away and Velma held their life estate through a trust.

[¶6]    In 2021, at Mr. Deselms' request, Helis obtained a title opinion which, among other things, addressed where royalty and other payments should be directed if drilling occurred.  The title opinion stated Velma Woods was not entitled to royalties because she only held a life estate.  Helis informed her by letter in June 2021 that she would be paid interest on the royalties, but all royalties associated with her mineral estate interest would be held in an escrow account until her death and would then transfer to the remainderman, Mr. Deselms.  A few months later, in September 2021, Velma sold her life estate interest to Phoenix Capital for $700,000, with no warranty of title, and recorded a deed to that effect.  Velma recorded an affidavit with that deed stating her understanding that the life estate interest included the right to receive royalties, bonus payments, and other revenue.

[¶7]    In accordance with the title opinion and the 2021 letter to Velma, Helis notified Phoenix Capital that all royalty amounts attributable to Phoenix Capital's life estate would be placed in escrow but interest from the escrowed funds would be distributed to Phoenix Capital.  Believing it was entitled to the royalties, not just the interest earned on the royalty deposits, Phoenix Capital filed an action against Mr. Deselms, Paul and Cheryl Woods, and Helis to declare the rights under the deed and quiet title, or, in the alternative, to reform the deed to allow the life estate to collect the royalties.  Phoenix Capital sought to recover all unpaid royalties and other payments plus interest.  It also sought damages for slander of title.  During the litigation, Helis conveyed the disputed mineral interest to North Silo Resources, LLC who was then substituted for Helis as a party.

[¶8]    Mr. Deselms filed a motion to dismiss.  The district court granted his motion, concluding that the doctrine of waste precludes a life estate owner from receiving royalties without an agreement with the remainderman or express language in the deed allowing for payment of royalties to the life estate owner.  It also determined the claim to reform the deed was barred by the statute of limitations.  The court dismissed the claims against Paul and Cheryl Woods on the same grounds at summary judgment.  All other claims were dismissed after the remaining parties reached a settlement agreement.  Phoenix Capital timely appealed the orders granting the motion to dismiss and summary judgment.

2

## STANDARD OF REVIEW

[¶9]    We review motions to dismiss decided under Wyo. R. Civ. P. 12(b)(6) de novo. *Mitchell v. Rust*, 2023 WY 47, ¶ 10, 529 P.3d 1062, 1066 (Wyo. 2023) (citation omitted). We examine the same materials and apply the same standards as the district court, accepting the facts alleged in the complaint as true and viewing them in the light most favorable to the non-moving party. *Williams v. Lundvall*, 2024 WY 27A, ¶ 6, 545 P.3d 431, 433 (Wyo. 2024) (citation omitted). "[D]ismissal is appropriate only if it is certain on the face of the complaint that the plaintiff cannot assert any facts that create entitlement to relief." *Id.*

[¶10]  Likewise, we review summary judgment decisions de novo, affording no deference to the district court's ruling. *Sellers v. Claudson*, 2024 WY 69, ¶ 10, 550 P.3d 559, 564–65 (Wyo. 2024) (quoting *Kudar v. Morgan*, 2022 WY 159, ¶ 11, 521 P.3d 988, 992 (Wyo. 2022)). We evaluate the record from the viewpoint most favorable to the party opposing the motion for summary judgment, giving that party all the favorable inferences which may be drawn from the facts contained in affidavits, depositions, and other materials appearing in the record. *Id.*

## DISCUSSION

### I.      The doctrine of waste limits a life tenant's rights, and the 2006 deed did not expand Phoenix Capital's life estate to include a right to royalty payments.

[¶11]  The owner of a fee simple mineral estate enjoys a host of rights, including the rights to produce the minerals, lease the minerals, receive bonus and rental payments, and receive royalties. *Smith v. B & G Royalties*, 2020 WY 106, ¶ 11, 469 P.3d 1206, 1212 (Wyo. 2020) ("The ownership of an unrestricted mineral interest includes all the incidents of ownership, some of which are the right to execute oil, gas and mineral leases and the right to receive bonuses, rentals and royalties." (emphasis in original removed) (quoting *Picard v. Richards*, 366 P.2d 119, 123 (Wyo. 1961)). The scope of rights included in a life estate in minerals is more limited.[2] Relevant here, a life estate owner has no unilateral right to develop minerals and no right to receive royalties. *Welborn v. Tidewater Associated Oil Co.*, 217 F.2d 509, 510–11 (10th Cir. 1954); 2 William & Meyers, Oil & Gas, § 512.1 (2022); 1 Kunz, Oil & Gas, § 8.1 (1987). Wyoming addressed this rule in 1923:

> [C]ourts have been unanimous in holding, or at least
> substantially so, that a life tenant has no right whatever, as
> against a remainderman, to open up new mines or quarries or

---

[2] A life estate is an estate held only for the duration of a specified person's life. *Redland v. Redland*, 2015 WY 31, ¶ 67, 346 P.3d 857, 880 (Wyo. 2015) (citation omitted); Black's Law Dictionary (12th ed. 2024). Phoenix Capital's life estate is for the duration of Velma Woods' life.

3

oil or gas wells, or lease the land for that purpose to others. He may be enjoined from doing so; such a lease made is void; the proceeds arising therefrom belong to the remainderman, if he receives them.

*State v. Snyder*, 212 P. 758, 763 (Wyo. 1923) (citations omitted). *See also First Wyo. Bank, N.A.-Cheyenne v. First Nat. Bank & Tr. Co. of Wyo.*, 628 P.2d 1355, 1365–66 (Wyo. 1981) (evaluating this doctrine in the context of successive life estates where wells were already in production).

[¶12]  The purpose of this rule is to protect against waste, namely the waste of the mineral estate before the remainderman receives that estate. *See Welborn*, 217 F.2d at 510–11; 2 William & Meyers, Oil & Gas, § 512.1; 1 Kunz, Oil & Gas, § 8.1.  The minerals and royalties from their extraction are the corpus of the estate. *Snyder*, 212 P. at 763–64.  If the life tenant is allowed to consume the corpus of the estate, nothing would remain for the remainderman. *Id.*  To prevent this outcome, the life tenant is entitled only to the interest earned on the royalties attributable to the life estate mineral interest.  The royalty amounts themselves are deposited in escrow until the life estate ends.  When the life estate owner passes, the royalties belong, without restriction, to the remainderman.[3] *Welborn*, 217 F.2d at 510–11.

[¶13]  There are two exceptions to this rule: (1) the open mines doctrine and (2) express deed language that indicates the parties' intent to defeat the general rule. *Snyder*, 212 P. at 763 ("[L]ife estates, whether conventional or arising by operation of law, were impeachable for waste, unless the instrument creating a conventional life estate expressed a contrary intention." (citation omitted)); *First Wyoming Bank, N.A.-Cheyenne*, 628 P.2d at 1365–66 (applying the open mines doctrine); 1 Kunz, Oil & Gas, § 8.1.  Phoenix Capital asserts the second exception applies here.

[¶14]  The 2006 deed granted Alva and Velma:

. . . an undivided one-half interest in and under and that may be produced from the following described lands . . . TO HAVE AND TO HOLD the above described mineral interests

---

[3] While life tenants have no right to royalties, bonuses, and delay rentals, they are not without authority and leverage.  For example, the life tenant can refuse to lease their interest, thereby leveraging an opportunity to negotiate and execute apportionment agreements or other terms with the remainderman as a condition of leasing. *Welborn*, 217 F.2d at 510–11; 4 Summers Oil & Gas § 40:18 (3d ed. Nov. 2023 update). *See also First Wyoming Bank, N.A.-Cheyenne*, 628 P.2d at 1365 ("[W]here no mines were opened prior to the creation of the estates, neither the life tenant nor the remainderman is entitled to open the mines without the consent of the other." (citations omitted)).

> belonging to the said Grantee herein for the remainder of their life.

Phoenix Capital asserts the phrase "in and under and that may be produced" is sufficient to show that Alva and Velma Woods retained the right to produce the minerals and the ancillary right to receive royalties from that production.

[¶15]  Deeds are interpreted according to their plain language through which we discern the parties' intent. *N. Silo Res., LLC v. Deselms*, 2022 WY 116A, ¶¶ 14–16, 518 P.3d 1074, 1081–82 (Wyo. 2022) (citations omitted); *Mullinnix LLC v. HKB Royalty Tr.*, 2006 WY 14, ¶ 22, 126 P.3d 909, 919 (Wyo. 2006) ("[T]he ultimate goal of our interpretation of any contract, including a deed, is to discern the intention of the parties to the document." (citations omitted)).  We have interpreted mineral deed language on many occasions.  In doing so, we have held the words "in and under" and "produced from" create an unrestricted fee mineral interest, unless qualifying language is also present. *Smith*, 2020 WY 106, ¶ 12, 469 P.3d at 1212 (citations omitted).  The 2006 deed contains the qualifying language "for the remainder of their life" thus unambiguously conveying to Alva and Velma a life estate rather than a fee interest in minerals. *Picard*, 366 P.2d at 124.  As explained above, the rights of a life estate owner are narrower than the rights of a fee mineral owner. *See Snyder*, 212 P. at 763; William & Meyers, Oil & Gas, § 512.1; 1 Kunz, Oil & Gas, § 8.1.

[¶16]  The terms "in and under" and "produced from," while describing a mineral estate, do not confer unrestricted mineral rights when they appear with express language limiting the duration of that estate.  More is needed to evidence the parties' intent to defeat or modify the doctrine of waste as it applies to the limited duration life estate.  For example, in *Hess v. Hobart*, 477 P.3d 771 (Colo. Ct. App. 2020), a party conveyed land but retained a life estate in "all mineral rights on the property including but not limited to all oil, gas, hydrocarbons and any other minerals." *Id.* at 773.  The Colorado Court of Appeals expressly recognized the doctrine of waste and the general rule that a life tenant may not consume the corpus of the estate absent an agreement with the remainderman, *id.* at 776–77, but concluded the language in the deed unambiguously retained "all rights" to the mineral estate, including the rights to royalties, bonus payments, and other revenue. *Id.* at 775–76.  In *Danielson v. Danielson*, 560 P.2d 893 (Mont. 1977), a father granted a son and daughter a fee interest in a portion of his land. *Id.* at 893.  They in turn conveyed a life estate back to the father granting him, within the language of the deed, "the right to use, as he may deem fit, and to receive the income and proceeds." *Id.* at 893–94.  The court held this language was sufficient to grant the father the right to mine gravel and retain the proceeds from that operation. *Id*. at 893–95.  Equivalent language is entirely absent here.

[¶17] Phoenix Capital invites us to also consider extrinsic evidence attached to its Complaint—Velma Woods' affidavit filed with the 2021 deed to Phoenix Capital—to demonstrate the context and intent of the 2006 deed transaction between family members.

We cannot accept that invitation. The circumstances whereby extrinsic evidence is relevant are limited. *N. Silo Res., LLC*, 2022 WY 116A, ¶¶ 19–20, 518 P.3d at 1082–83 (allowing extrinsic evidence when contracts are ambiguous or when contract terms have a technical or special meaning requiring evidence of local usage or other circumstances to understand); *Davidson v. Wyo. Game & Fish Comm'n*, 2010 WY 121, ¶ 27, 238 P.3d 556, 565 (Wyo. 2010) (prohibiting use of extrinsic evidence when contract language is unambiguous); *Hickman v. Groves*, 2003 WY 76, ¶¶ 11–15, 71 P.3d 256, 259–62 (Wyo. 2003) (discussing the limited role of extrinsic evidence to define technical terms and terms affected by local usage). Extrinsic evidence of context "cannot be invoked to contradict the clear meaning of the language used, . . . extraneous circumstances do not justify a court in proceeding to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties." *Upper Wagon Box, LLC v. Box Hanging Three Ranch Ltd. P'ship*, 2022 WY 155, ¶ 23, 521 P.3d 551, 560 (Wyo. 2022) (quoting *Lozier v. Blattland Invs., LLC*, 2004 WY 132, ¶ 9, 100 P.3d 380, 383–84 (Wyo. 2004)).

[¶18]  Moreover, we consistently reject the use of the parties' subjective expressions of intent as permissible extrinsic evidence of the context of a transaction. *N. Silo Res., LLC*, 2022 WY 116A, ¶¶ 19–20, 518 P.3d at 1082 ("Because we use an objective approach to interpret contracts, evidence of a party's subjective intent is not admissible, regardless of whether the court determines a contract is ambiguous or clear." (quoting *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 23, 226 P.3d 889, 905 (Wyo. 2010)); *Hickman*, 2003 WY 76, ¶ 11, 71 P.3d at 259–60 (quoting *KN Energy, Inc. v. Great W. Sugar Co.*, 698 P.2d 769, 776–77 (Colo. 1985)). *See also* 11 Williston on Contracts § 32.7 (4th ed. May 2024 update) ("'[S]urrounding circumstances' do not embrace . . . [the parties'] understanding of what particular terms in their agreement mean. Rather, the term refers to the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties. Such matters as, for example, whether one or both parties was new to the trade, whether either or both had counsel, and the nature and length of their relationship . . . ."). Velma Woods' affidavit is a subjective statement of the family's purported intent in the 2006 deed to Alma and Velma. The district court was correct to exclude that subjective statement as extrinsic evidence.

## II.  *Phoenix Capital's reformation claim is barred by the statute of limitations.*

[¶19]  Absent a favorable deed interpretation, Phoenix Capital asked the district court to reform the deed to include language reserving a right in the life estate owner to receive royalties. Reformation is an equitable remedy allowing for the correction of a deed or contract when the instrument does not accurately state the parties' agreement due to a mutual mistake. *Sanders v. Sanders*, 2010 WY 77, ¶ 12, 234 P.3d 343, 348 (Wyo. 2010); *Hutchins v. Payless Auto Sales, Inc.,* 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo. 2002). *See also Crompton v. Bruce*, 669 P.2d 930, 934 (Wyo. 1983) (requiring the three elements

6

for reformation be proven by clear and convincing evidence).  As its basis for reformation, Phoenix Capital asserts the Woods family made a mistake when drafting the 2006 deed.

[¶20]   Reformation claims must be brought within ten years.  Wyo. Stat. Ann. § 1-3-109; *Samuel Mares Post No. 8 v. Bd. of Cnty. Comm'rs of Converse Cnty.*, 697 P.2d 1040, 1042 (Wyo. 1985).  The district court concluded the ten-year limitations period began in October 2006 when Alva and Velma's deed was recorded.  The limitations period therefore expired before this litigation began in January 2022.  Phoenix Capital asserts the discovery rule applies, meaning the limitations period did not begin until Velma Woods knew or had reason to know of the alleged deed defect.  *Redland*, 2015 WY 31, ¶ 52, 346 P.3d at 874 ("Wyoming is a discovery jurisdiction, which means that a statute of limitation is triggered when a plaintiff knows or has reason to know of the existence of a cause of action." (citation omitted)).  According to Phoenix Capital, the earliest date the limitations period could have begun to run was in 2015 when the remainderman, Mr. Deselms, leased his interest but that "[i]n all practicality, the issue did not become apparent until Helis placed the royalties in suspense years later."

[¶21]   Phoenix Capital relies on *Moats v. Professional Assistance, LLC*, 2014 WY 6, 319 P.3d 892 (Wyo. 2014) to support its position that the facts of this case warrant application of the discovery rule.  That case is distinguishable on several grounds and is limited to its facts and claims.  In *Moats*, a deed defect was identified during a real estate closing.  The closing agent then left the room for twenty minutes, returned, and stated the defect in the deed was fixed.  *Id.* at ¶¶ 1, 9–10, 28, 319 P.3d at 893, 894, 900.  The deed was not actually fixed, the erroneous deed was recorded, and litigation began several years later.  The claim in *Moats* was one for professional negligence against the title company and was subject to a two-year statute of limitations.  *Id.* at ¶¶ 15, 19, 319 P.3d at 896–97.  We held the discovery rule applied and there was a genuine issue of material fact precluding summary judgment on a statute of limitations defense, namely whether Mr. Moats was reasonably diligent in discovering the title defect.  *Id.* at ¶ 28, 319 P.3d at 900.  The case before us is not one of negligence and does not present the unique fact scenario of a tortfeasor's assurance it corrected the deed and the host of other material facts we noted.  *See id.* at ¶ 25, 319 P.3d at 898.  Rather, this case presents a straightforward matter of deed reformation where the parties did not use deed language necessary to reserve the right to royalties.

[¶22]   For claims challenging deed language, the limitations period begins when the deed is recorded.  *Samuel Mares Post No. 8*, 697 P.2d at 1042 (concluding the statute of limitations barred a request to reform a 50-year-old deed, noting the difficulty of producing competent evidence after so many years and that "[t]here must be a finality to such actions to give deeds a certain degree of credence"); *Town of Glenrock v. Abadie* (*Abadie I*), 259 P.2d 766, 771–72 (Wyo. 1953) (concluding the equitable claim to reform a 30-year old mineral deed was barred by the statute of limitations because once a deed is recorded, the parties are charged with the responsibility to review the deed, ascertain its meaning,

determine any mistakes, and seek timely relief from the courts). The recording of the deed marks the beginning of the limitations period for reformation because the record notice is sufficient to advise claimants of the language in the deed and the need to investigate claims against that deed and correct mistakes. *See Abadie I*, 259 P.2d at 771–72; *Town of Glenrock v. Abadie* (*Abadie II*), 262 P.2d 393, 395 (Wyo. 1953) ("[T]he recorded muniments of title imply the necessary possession of the subsurface, and such record title is of itself sufficient to advise of the adverse claim and the commencement of the running of the statute of limitations."). The responsibility to draft the deed correctly, and promptly seek to remedy a mistake, is on the parties to the deed. *Samuel Mares Post No. 8*, 697 P.2d at 1042. To allow reformation after the limitations period defeats the principle of finality the statute of limitations is intended to enforce. *Id.*

[¶23] Determining when a limitations period begins can sometimes be an issue of fact and survive dismissal and summary judgment. *Murphy v. Housel & Housel*, 955 P.2d 880, 883 (Wyo. 1998) (citation omitted). However, where "uncontroverted facts exist that demonstrate with specificity the time when a reasonable person would have been placed on notice," it is appropriate to resolve the question as a matter of law. *Id.* (citation omitted). It is uncontroverted in the Complaint and its attachments that the deed Paul and Cheryl granted to Alva and Velma was recorded in 2006. As such, the district court appropriately addressed the statute of limitations as a matter of law.

[¶24] The pleaded facts, which we must accept as true under the governing standards of review, are that Velma Woods thought the life estate included the right to receive royalties. Yet, however harsh the result for Velma's successor in interest, we must presume that parties making an agreement—even those who do not consult legal counsel—know the law and contract with reference to the law. *Walliker v. Escott*, 608 P.2d 1272, 1278 (Wyo. 1980) ("It is a settled rule that parties making an agreement are presumed to know the law and to contract with reference to the law." (citing *Click v. Seale*, 519 S.W.2d 913, 920 (Tex. 1975)); *see Gaudina v. Haberman*, 644 P.2d 159, 166 (Wyo. 1982) ("It has long been a basic precept that ignorance of the law is no excuse. It would be impossible to administer the [law] if ignorance of its requirements and the surrounding case law were a defense" (citing *Utermehle v. Norment*, 197 U.S. 40, 55, 25 S. Ct. 291, 296, 49 L.Ed. 655, 661 (1905))). As explained above, the plain language of the 2006 deed conveyed to Alva and Velma a life estate in one-half of the mineral estate. Notwithstanding the pleaded facts, the deed contains no language as the law requires to avoid applying doctrine of waste principles. The ten-year statute of limitations to reform that deed began to run when it was recorded in 2006, thus making Phoenix Capital's 2022 reformation claim untimely. We are not permitted to make exceptions within the law governing this dispute for parties unaware of what the law requires.

8

## *CONCLUSION*

[¶25]  The motions to dismiss and for summary judgment were properly decided as a matter of law even when construing all facts pleaded as true and in favor of Phoenix Capital as the non-moving party.  Our precedent regarding the limited rights of a life tenant in a mineral estate is sound.  It is also well-settled that the limitations period for reformation of a deed begins to run when the deed is recorded.  The district court did not err in applying those precedents and concluding that Phoenix Capital, as a life tenant, has no right to receive royalties and the period for deed reformation has expired.  We affirm.