**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 9, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

TRUE OIL, LLC, a Wyoming limited
liability company; TRUE RANCHES,
LLC, a Wyoming limited liability
company,

     Plaintiffs - Appellants,

v.

BUREAU OF LAND MANAGEMENT;
DUANE SPENCER, in his official
capacity as Wyoming Bureau of Land
Management Deputy State Director; JOHN
ELLIOTT, in his official capacity as
Acting Field Manager of the Rawlins Field
Office, High Desert District; UNITED
STATES DEPARTMENT OF INTERIOR;
DOUG BURGUM*, in his official capacity
as Secretary of the Interior,

    Defendants - Appellees.

------------------------------

PETROLEUM ASSOCIATION OF
WYOMING,

    Amicus Curiae.

No. 23-8082

_____

* Pursuant to Fed. R. App. P. 43(c)(2), Deb Haaland is replaced by Doug
Burgum, as Secretary of the Interior.

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:22-CV-00188-KHR)**

_____

Patrick J. Murphy (Scott E. Ortiz, and Alia T. Scott, with him on the briefs), Williams, Porter, Day & Neville, P.C., Casper, Wyoming, for Plaintiffs-Appellants.

Kevin W. McArdle, Attorney (Todd Kim, Assistant Attorney General, with him on the brief), Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

Kathleen C. Schroder, Davis Graham & Stubbs LLP, Denver, Colorado, filed an amicus curiae brief for Petroleum Association of Wyoming, in support of Plaintiffs-Appellants.

_____

Before **HOLMES**, Chief Judge, **EBEL**, and **BACHARACH**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

This case presents a dispute over the respective property rights of a surface owner and a mineral owner in a split estate. Plaintiff True Ranches owns the surface estate in a tract of land in which the federal government owns the mineral estate. Plaintiff True Oil, a related entity, owns the mineral estate in an adjacent tract of land. True Ranches has agreed to let True Oil drill a traversing well that begins on True Ranches' surface estate, traverses through the subsurface containing the federal minerals, and ends up in True Oil's adjacent tract. The Bureau of Land Management (BLM) manages the federal minerals that would be traversed. The process of drilling the proposed well would involve removing a small amount of federal minerals, but,

2

once completed, the well would produce only from True Oil's minerals in the adjacent tract.

BLM informed Plaintiffs that they would need to submit an application for a permit to drill (APD) to the agency prior to drilling the proposed well through the federal mineral estate. Following some unsuccessful negotiations during which Plaintiffs insisted they did not need a permit, Plaintiffs brought this claim under the Administrative Procedure Act (APA) and the Declaratory Judgment Act (DJA) requesting a declaration that they have a right to drill the proposed traversing well through the federal mineral estate without BLM's consent. Plaintiffs argued that BLM does not have the authority to require its consent for the proposed traversing well pursuant to either (1) the government's rights as owner of the mineral estate that Plaintiffs want to traverse or (2) BLM's statutory authority under the Mineral Leasing Act (MLA). The district court rejected Plaintiffs' arguments and entered judgment in favor of BLM on the merits. Notwithstanding having received a favorable ruling, BLM now argues on appeal that the district court lacked jurisdiction to hear Plaintiffs' claim because that claim had to be brought under the Quiet Title Act (QTA). We agree, and therefore resolve this case on jurisdictional grounds without reaching the merits of the dispute.

The QTA is "the exclusive means by which adverse claimants [can] challenge the United States' title to real property." Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 (1983). Thus, if a claim falls within the purview of the QTA, then courts lack jurisdiction to hear it under another statute. See Rosette,

3

Inc. v. United States, 141 F.3d 1394, 1396–97 (10th Cir. 1998); Navajo Tribe of Indians v. New Mexico, 809 F.2d 1455, 1468–69 (10th Cir. 1987).  Here, Plaintiffs assert that their surface ownership includes a property right to drill through the subsurface containing minerals owned by the United States and that the government's mineral ownership does not give BLM the right to prevent Plaintiffs from doing so, even where drilling involves removing a small amount of those minerals.  This presents a legal dispute over ownership rights (i.e., title rights) in the subsurface minerals being traversed and removed, and such disputes belong under the QTA.  Therefore, the district court lacked jurisdiction to hear this dispute under the APA or the DJA.

Because we decide this case on jurisdictional grounds, we do not address the merits of Plaintiffs' claim or determine either party's rights with respect to this dispute.  Rather, we conclude only that granting Plaintiffs' requested relief in this case requires resolving a dispute over property rights that can be resolved only under the QTA.  Therefore, we, like the district court, lack jurisdiction to consider the merits of Plaintiffs' claim brought under the APA and the DJA.  Exercising jurisdiction under 28 U.S.C. § 1291, we VACATE the district court's judgment in favor of BLM and REMAND this case with instructions to dismiss this action for lack of jurisdiction.

## I.  BACKGROUND

In 1922, the federal government conveyed a 160-acre surface estate in Laramie County, Wyoming to True Ranches' predecessor in interest, while reserving the

4

underlying mineral estate for the public. True Ranches acquired this surface estate in 1983, subject to the federal government's mineral reservation. True Oil owns the mineral estate in an adjacent tract. In order to develop its minerals, True Oil wants to drill a horizontal well starting on True Ranches' surface estate (with True Ranches' permission) and traversing through the federal subsurface mineral estate on that tract to get to True Oil's minerals in the adjacent tract.

In February 2022, True Oil contacted BLM, which manages the federal minerals at issue, to discuss its plan and "respectfully request[] BLM grant its consent through the approval of federal APDs or other acceptable means to drill through but not complete that portion of the laterals traversing the federal [mineral tract]."[1] (II Aplt. App. 73.) BLM informed True Oil that it could not authorize the proposed well because the federal mineral tract through which True Oil's well would traverse was subject to an order from the United States District Court for the District of Montana prohibiting oil and gas development and BLM believed the proposed well might violate that order.[2] BLM also advised True Oil that, if it drilled without

---

[1] In this context, "completion" of a well refers to those post-drilling processes necessary to make the well capable of producing oil and gas from the penetrated subsurface property, such as perforating the well casing to allow oil and gas to flow in. See Exxon Corp. v. Emerald Oil & Gas Co., 348 S.W.3d 194, 211 (Tex. 2011). In stating that it would not "complete" the portion of the well traversing the federal mineral tract, True Oil thus expressed that it did not intend to carry out those processes necessary to produce oil and gas from the federal mineral tract itself. Instead, True Oil would complete, and thus be able to produce oil and gas from, only that portion of the well located in True Oil's mineral tract.

[2] The order stemmed from an ongoing case in which several environmental organizations challenged BLM's issuance of various federal mineral leases. Montana

BLM's approval, BLM would take all legal action available to it against True Oil, including imposing civil and criminal penalties.   Based on BLM's clear stance, Plaintiffs filed the present suit asserting that BLM does not have the legal authority to require its consent for their proposed well that would traverse through, but not produce from, the federal minerals, regardless of BLM's reasons for denying its consent.[3]

Shortly after this, True Oil proposed an alternative plan to traverse a different federal lease that was not the subject of the Montana litigation, hoping to address BLM's concerns about violating the District of Montana order.  But "BLM expressed the position that a federal APD would be required to traverse any federal minerals in

---

Wildlife Fed'n v. Bernhardt, No. CV-18-69-GF-BMM, 2022 WL 742477 (D. Mont. Mar. 11, 2022) (unreported).  One of the challenged leases, Lease No. WYW-186666, was for the federal mineral tract at issue in this case.  In an order by Judge Morris, the Montana District Court ruled against BLM and vacated the leases, but stayed vacatur pending appeal.  Id. at *5.  It ordered that "there shall be no further work developing the . . . leases or obtaining production from such leases in any way pending appeal" and "operations related to those leases will be suspended."  Id. BLM interpreted this to prohibit True Oil's proposed well, which would traverse one of the affected leases, and it wrote a letter to True Oil explaining its position:

> because Judge Morris has ordered development activities on the lease suspended until the Ninth Circuit rules on appeal, BLM cannot authorize the request to traverse WYW-186666 if the traversing borehole could be considered to provide for subsequent development of the lease unless Judge Morris has approved such activity pursuant to a filed motion.

(II Aplt. App. 161.)

[3] In this appeal, Plaintiffs do not specifically challenge BLM's reason for withholding authorization to drill.  They argue only that BLM does not have the right to require Plaintiffs to obtain BLM's authorization in the first place.  Therefore, we do not address the reason advanced by BLM for denying True Oil access through the federal mineral estate.

6

a split estate." True Oil LLC v. Bureau of Land Mgmt., 700 F. Supp. 3d 1004, 1007 (D. Wyo. 2023) (citation omitted). Plaintiffs filed an amended complaint to address BLM's updated position.

The amended complaint alleges that BLM's determination that an APD was required for Plaintiffs' proposed traversing well violated the APA because it was "in excess of statutory jurisdiction[ and] authority."[4] 5 U.S.C. § 706(2)(C). Plaintiffs request a declaration that their ownership of the surface estate includes the right to drill a well traversing through the federal minerals for the sole purpose of accessing private minerals located in an adjacent tract and that BLM does not have any right to require its permission pursuant to either (1) the government's rights as the mineral owner or (2) BLM's statutory authority.

The district court disagreed and ruled in favor of BLM. It first concluded that Congress has the authority to regulate a well traversing the federal minerals because in the Stock-Raising Homestead Act, under which the mineral and surface estates in this case were split, the government retained regulatory authority sufficient to protect its mineral estate from injury. True Oil, 700 F. Supp. 3d at 1012–13. The court also held that the Property Clause of the U.S. Constitution gives Congress the requisite authority to regulate a well traversing the federal mineral estate. Id. at 1013–14. It

---

[4] Plaintiffs' amended complaint also alleged that BLM's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(2)(A). However, Plaintiffs have abandoned this challenge, asserting in their Reply Brief to this court that "the applicable standard of review" is under § 706(2)(C), "not 5 U.S.C. § 706(2)(A)." (Aplt. Reply Br. 3 (emphasis in original).)

then concluded that Congress had delegated this authority to BLM in the Mineral Leasing Act (MLA), so BLM was authorized to regulate traversing wells. Id. at 1014 (relying on the MLA's broad grant of authority "to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of [the MLA]" (quoting 30 U.S.C. § 189)); see Harvey v. Udall, 384 F.2d 883, 885 (10th Cir. 1967). Finally, the district court held that True Oil qualifies as an "operator" under BLM's regulations governing APDs, so therefore BLM had authority under those regulations to require True Oil to file an APD. True Oil, 700 F. Supp. 3d at 1014. However, the court also stated that, "[r]egardless if there is a specific regulation on point, it is well within the BLM's authority to regulate subsurface activity that could hinder or threaten its mineral interest." Id.

Plaintiffs timely filed this appeal.

## II. DISCUSSION

### A. Standard of review

We do not address our substantive review standards under the APA because we dispose of this case based on lack of jurisdiction. We review de novo whether the district court had subject-matter jurisdiction to consider Plaintiffs' claim under the APA and the DJA when the claim presents an issue that must be adjudicated exclusively under the QTA. See The Wilderness Soc. v. Kane Cnty., 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc).

8

**B. Whether Plaintiffs' claim belongs under the QTA is a jurisdictional issue**

Plaintiffs brought this claim under the APA and the DJA, asserting BLM acted in excess of its statutory authority when it required an APD. Plaintiffs request a declaration that they have the right to drill a well traversing through the federal minerals without BLM's consent. On appeal, BLM argues that Plaintiffs' claim should have been brought under the QTA. This argument was not raised before the district court.[5] Nevertheless, BLM argues that whether the claim belongs under the QTA is a jurisdictional issue, which we must address regardless of whether it was raised below. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). So, we first address whether a federal court has jurisdiction to hear what is in essence a QTA claim when the challenge is instead brought under another statute. We conclude, under our controlling precedent, that such a claim must exclusively be brought under the QTA and thus this court has no subject-matter jurisdiction to consider this particular claim brought by Plaintiffs, instead, under the APA and the DJA.

In Block v. North Dakota ex rel. Board of University & School Lands, the Supreme Court held that "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property."

---

[5] The only thing BLM points to as having raised the issue below is the following statement from its Brief in Support of Motion to Dismiss: "This is not a proper petition for review under the APA because plaintiffs are not actually seeking a remedy that comes from reviewing final agency action." (Aple. App. 19.) This did not raise the assertion that this claim belongs exclusively under the QTA.

461 U.S. 273, 286 (1983). This means that if a claim falls within the purview of the QTA, then it cannot be brought under another statute. See Rosette, Inc. v. United States, 141 F.3d 1394, 1396–97 (10th Cir. 1998).

Critical to our conclusion in this case, we have treated the exclusivity of the QTA as a jurisdictional limitation. In Navajo Tribe of Indians v. New Mexico, we described Block as holding that the QTA was the plaintiff's "legally exclusive jurisdictional basis, [which] could not be circumvented by . . . attempting to establish jurisdiction under alternative statutes." 809 F.2d 1455, 1468–69 (10th Cir. 1987) (emphasis added). We then rejected plaintiff Navajo Tribe's attempt to establish jurisdiction over a title issue under statutes other than the QTA, explaining: "Because the QTA is 'the exclusive means by which adverse claimants [may] challenge [the United States'] title to real property,' see [Block, 461 U.S. at 286], the Tribe's recitation of other statutes that purport to grant jurisdiction is irrelevant." Id. at 1469 (first alteration in original); see also Sw. Four Wheel Drive Ass'n v. Bureau of Land Mgmt., 363 F.3d 1069, 1071 (10th Cir. 2004) (considering plaintiff's claim to quiet title to certain roads on federal land and concluding, "[b]ecause the Quiet Title Act is the exclusive means for challenging the United States' title to real property, if Southwest cannot state a claim within the terms of the Act's provisions, the federal courts lack jurisdiction over its suit" (internal citation omitted)). Navajo Tribe thus

establishes that, if a claim falls within the purview of the QTA, a court lacks subject-matter jurisdiction to hear it under any other statute.[6]

Applying that holding here, if Plaintiffs' claim falls within the purview of the QTA, then the district court lacked subject-matter jurisdiction to hear it under the APA and the DJA. We turn now to this jurisdictional question of whether Plaintiffs' claim belongs under the QTA.[7]

---

[6] At least two other circuits have similarly treated the exclusivity of the QTA as a jurisdictional requirement, albeit without discussion. See Montanans For Multiple Use v. Barbouletos, 568 F.3d 225, 228–29 (D.C. Cir. 2009) (affirming district court's dismissal for lack of subject-matter jurisdiction plaintiffs' claim seeking ownership of certain roads because plaintiffs did not assert a cause of action under the QTA); Shawnee Trail Conservancy v. U.S. Dep't of Agric., 222 F.3d 383, 388 (7th Cir. 2000) ("Because we believe that Congress intended for suits that require resolution of a disputed claim to real property in which the United States claims an interest to be brought under the QTA, we hold that the district court properly dismissed the plaintiffs' constitutional challenge for lack of subject matter jurisdiction.").

[7] BLM's argument that Plaintiffs' claim cannot be brought under the APA relies primarily on the requirements of the APA itself, rather than the exclusivity of the QTA outlined in Block. Specifically, § 704 of the APA provides that, where an agency action is not expressly made reviewable by statute, judicial review under the APA is available only for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. BLM asserts that the requirements of § 704 are jurisdictional and that the QTA provides an "other adequate remedy" for Plaintiffs. Because we conclude that, under Tenth Circuit precedent, the exclusivity of the QTA outlined in Block is a jurisdictional limitation that requires Plaintiffs' claim to be brought under that statute, we do not reach BLM's argument regarding § 704 of the APA, although BLM's argument under the APA, if accepted, would lead to the same result we reach here.

**C. Plaintiffs' claim presents a dispute over property rights that exclusively belongs under the QTA**

Plaintiffs assert that their ownership of the surface estate includes a property right to drill a well traversing through the federal subsurface mineral estate and that the government's mineral ownership does not give BLM the right to prevent them from doing so, even where drilling would involve the removal of a small amount of those minerals. Because this presents a dispute over property rights that belongs exclusively under the QTA, the district court was without jurisdiction to consider Plaintiffs' claim under the APA or the DJA.

The QTA provides, in relevant part:

(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . . .

. . . .

(d) The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a. As subsection (d) indicates, the QTA extends beyond just disputes over fee simple ownership of property, applying to "suit[s] by a plaintiff asserting a 'right, title, or interest' in real property that conflicts with a 'right, title, or interest' the United States claims." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 215 (2012) (quoting 28 U.S.C. § 2409a(d)); see also 28 U.S.C. § 1346(f) (granting district courts "exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States"). For example,

12

"[e]asements are real property interests subject to quiet title actions." Kinscherff v. United States, 586 F.2d 159, 161 (10th Cir. 1978).

We have applied a two-part test to determine whether a claim falls within the purview of the QTA. "[F]or a court to have jurisdiction over a QTA claim, the plaintiff must establish that: (1) the United States 'claims an interest' in the property at issue; and (2) title to the property is 'disputed.'" Kane Cnty. v. United States, 772 F.3d 1205, 1210–11 (10th Cir. 2014) (citing Leisnoi, Inc. v. United States, 267 F.3d 1019, 1023 (9th Cir. 2001)), abrogated on other grounds by Wilkins v. United States, 598 U.S. 152 (2023). Because the QTA applies to disputes over property rights and interests, not just title, "[c]ourts have typically 'equated the requirement of a disputed title with disputed ownership.'" McMaster v. United States, 177 F.3d 936, 941 (11th Cir. 1999) (quoting Dunbar Corp. v. Lindsey, 905 F.2d 754, 759 (4th Cir. 1990)); see Kansas v. United States, 249 F.3d 1213, 1224 (10th Cir. 2001).

In this case, Plaintiffs' claim presents a dispute over ownership rights in real property that must be resolved under the QTA. In their own words, Plaintiffs' raise a "question[] involving real property rights." (Aplt. Br. 40.) They assert that "[t]he right to build a traversing well belongs to the surface estate," (id. at 10), they argue that "BLM does not have a property right to exclude drilling below the surface," (id. at 48), and they request a "property rights determination," (id. at 10–11). At the same time, Plaintiffs acknowledge the proposed well would involve drilling through,

13

and removing a small amount of, federal minerals.[8]  Thus, their assertion that "the right to drill a traversing well belongs to the surface estate" is, at its core, an assertion that the surface estate includes a limited trespass and taking interest in the subsurface minerals, thereby diminishing the government's claimed property right in those minerals.  Under the test from Kane County, Plaintiffs' claim conflicts with the government's assertion of unencumbered fee simple ownership of the subsurface mineral estate and presents a property dispute over each party's ownership rights in the subsurface minerals.  Therefore, it belongs under the QTA.

Plaintiffs argue their claim does not belong under the QTA because there is no dispute over title—both parties agree the United States owns all subsurface minerals while True Ranches owns the non-mineral subsurface materials.  Plaintiffs suggest that they seek only to enforce their undisputed rights in the non-mineral subsurface materials and that BLM is interfering with those rights by requiring its consent to drill their proposed traversing well—a claim Plaintiffs say does not create a dispute over title or ownership.

---

[8] Despite repeatedly making conclusory statements that they will not remove federal minerals (e.g., "True Oil's drilling plan does not involve the production or removal of any federal minerals," (Aplt. Br. 34)), Plaintiffs acknowledge that they will drill through federal minerals, (Oral Arg. at 41:17–41:30), and that "drilling a wellbore does involve the removal of some drill cuttings from the portion of the geologic formation it is traversing," (I Aplt. App. 36 ¶ 155 (emphasis in original)).  Thus, their claim is premised on the likelihood of some mineral removal and any assertions that drilling would not involve the removal of federal minerals are contradicted by the record.

But the essence of Plaintiffs' claim is a challenge to BLM's assertion of the United States' unencumbered title to the subsurface minerals. The United States owns all the subsurface minerals in fee simple. See Smith v. B&G Royalties, 2020 WY 106, ¶ 11, 469 P.3d 1206, 1212 (Wyo. 2020) (explaining that, under Wyoming law, a mineral estate is "an estate in fee simple in and to the minerals" that "includes all the incidents of ownership" (quoting Picard v. Richards, 366 P.2d 119, 123 (Wyo. 1961)).[9] This includes, as one of the sticks in the bundle of rights associated with real property ownership, the right to exclude others from access. See Cedar Point Nursery v. Hassid, 594 U.S. 139, 149 (2021) ("The right to exclude is 'one of the most treasured' rights of property ownership." (quoting Loretto v. Teleprompter

---

[9] While we interpret the QTA according to federal law, we may look to state property law as an aid in determining whether and how the QTA applies in a specific case. See Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation, 599 F.3d 1165, 1177 (10th Cir. 2010). As we have previously explained:

> "Because § 2409a limits the sovereign immunity of the United States, it must be interpreted according to federal law." Amoco Prod. Co. v. United States, 619 F.2d 1383, 1387 (10th Cir. 1980) . . . . "However, federal courts may properly look to state law as an aid in determining the application of statutory language to specific facts." [Id.] In particular, "questions involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located." Id. But "such state law should be compatible with the purpose of [the legislation so as] to find the rule that will best effectuate the federal policy." Vincent Murphy Chevrolet Co.[ v. United States, 766 F.2d 449, 451 (10th Cir. 1985)] (alterations in original) (internal quotation marks omitted).

Rio Grande Silvery Minnow, 599 F.3d at 1177.

Manhattan CATV Corp., 458 U.S. 419, 435 (1982))).[10]  At the same time, Plaintiffs

challenge BLM's right to exclude by asserting their own right of access through the

subsurface containing the federal minerals.  This presents a dispute over what

property rights each party holds in the minerals, rather than merely a dispute over one

party's interference with the undisputed property rights of another.

This distinction is illustrated by contrasting this case with the Ninth Circuit's

decision in Robinson v. United States, 586 F.3d 683 (9th Cir. 2009).  In that case, the

Robinsons owned a sixty-foot-wide easement for a road across a parcel of land

owned by the United States in trust for the Mooretown Rancheria of Maidu Indians of

California ("Mooretown").  Id. at 684–85.  Mooretown constructed a casino and a

variety of infrastructure improvements on the parcel, including a fence, fire hydrant,

and concrete walkway that were situated along the boundary line of the Robinsons'

easement.  Id. at 685.

The Robinsons believed that these structures encroached on their easement and

that construction was causing subsidence of their road.  They sued the United States

alleging disruption of lateral and subjacent support, negligence, and nuisance.  Id.

The United States responded by arguing that the claim belonged under the QTA

---

[10] One of the "essential interests" included in a mineral estate is the "right to
develop."  Smith, ¶ 11 n.3, 469 P.3d at 1212 n.3 (citing Reed v. Maltsberger/Storey
Ranch, LLC, 534 S.W.3d 51, 56 (Tex. App. 2017)).  The right to develop is defined
as "the exclusive right to possess, use, and appropriate" the minerals.  See Lightning
Oil Co. v. Anadarko E&P Onshore, LLC, 520 S.W.3d 39, 59 (Tex. 2017) (emphasis
added) (quoting Stephens Cnty. v. Mid-Kan. Oil & Gas Co., 254 S.W. 290, 293 (Tex.
1923)).

because it was a dispute over the scope of the Robinsons' easement and, therefore, a dispute over ownership rights. Id. The Robinsons countered that they were not "seek[ing] a declaration either establishing their right to the easement or determining its scope; rather, they [sought] relief in tort." Id. at 686.

After the district court concluded the dispute belonged under the QTA, the Ninth Circuit reversed. The court began by explaining that it "has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA." Id. It recognized the Robinsons were not expressly seeking a determination as to the existence or scope of the easement but noted that "resolution of their tort claims may require the court to consider the terms of the easement." Id. Finding "[w]hether such a suit falls within the scope of the QTA [to be] a question of first impression," id. at 686, the court proceeded to discuss the scope of the QTA in some depth before concluding:

> We adopt a pragmatic approach and conclude that a suit that actually challenges the federal government's title, however denominated, falls within the scope of the QTA regardless of the remedy sought. To hold otherwise would merely allow parties to avoid the limitations of the QTA by raising contract or tort claims. At the same time, a suit that does not challenge title but instead concerns the use of land as to which title is not disputed can sound in tort or contract and not come within the scope of the QTA,

id. at 688. Applying that holding to the facts of that case, the Ninth Circuit held the Robinsons' claims did not belong under the QTA because there was no dispute over the scope of ownership rights and thus no challenge to the government's asserted title:

17

> There is no dispute that the trust property was subject to a sixty-foot easement for specified purposes. The parties agree to that much. Although the Government suggests, vaguely, that it does dispute the easement, a close reading of its brief indicates that it maintains only that [Mooretown's] use of the land has not interfered with the easement, but does not disagree with the Robinsons about the land area or the intended use of the easement. The litigation therefore should not result in any adjudication of title to the easement claimed by the Robinsons, and the Robinsons' suit properly sounds in tort, as alleged.

Id.

Unlike in Robinson, where the parties agreed about the scope of their respective property rights, the dispute in this case centers on what property rights each party has in the minerals, not merely whether those rights were interfered with. The essence of Plaintiffs' claim is that BLM's asserted right to exclude is limited because the surface estate holds rights to the minerals for certain non-mineral-production purposes, such as access for traversing wells. Such a claim challenges the United States' unencumbered fee simple title and, therefore, belongs under the QTA.

Despite their focus on property rights, Plaintiffs argue that the core of their claim is really a challenge to BLM's statutory authority, not a dispute over property rights. They assert "this is a dispute about the BLM's scope of regulatory authority and jurisdiction under the MLA." (Aplt. Reply Br. 1.) But, as Plaintiffs themselves have repeatedly insisted, their arguments related to BLM's statutory authority are still inextricably linked to the issue of property rights. (See, e.g., Aplt. App. 138–39 (Pls.' Reply Br. in Supp. of Declaratory J. and Summ. J., filed Aug. 25, 2023) ("In order to determine whether the BLM's final agency action is in excess of its statutory jurisdiction, this Court must . . . make a split estate property rights determination as it

18

relates to oil and gas and the surface estate owner's right to build a traversing well as part of its surface rights.")); see Rosette, 141 F.3d at 1396.  Plaintiffs do not assert a challenge to BLM's statutory authority separate from their assertion of a property right to drill their proposed traversing well, and we will not craft such a hypothetical claim for them.

### III. CONCLUSION

In conclusion, Plaintiffs' assertion of a property right to drill a well traversing through federally owned minerals without BLM's consent falls within the exclusive purview of the QTA and, therefore, the district court lacked jurisdiction to hear this dispute under the APA and the DJA.  Accordingly, we VACATE the district court's decision and REMAND this case with instructions to dismiss this action for lack of jurisdiction.